Annick M. Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway Suite 1070
Oakland, CA 94612
Telephone: 510-254-6808
Facsimile: 202-973-0950
apersinger@tzlegal.com

Shana H. Khader*
Allison W. Parr*
Gemma Seidita (CA Bar No. 322201)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW Suite 1010
Washington, District of Columbia 20006
Tel: (202) 973-0900
Fax: (202) 973-0950
skhader@tzlegal.com
aparr@tzlegal.com
gseidita@tzlegal.com

*Application for admission *pro hac vice* forthcoming

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASSANDRA MARSHALL AND RAQUEL RILEY, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>   v.<br><br>PROCTER & GAMBLE COMPANY AND SPD SWISS PRECISION DIAGNOSTICS GMBH,<br><br>    Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Cassandra Marshall and Raquel Riley bring this action on behalf of themselves and all others similarly situated against Procter & Gamble Company and SPD Swiss Precision Diagnostics GmbH (together, "Defendants" or "Clearblue"). Plaintiffs make the following allegations based on the investigation of their counsel, and based upon information and belief, except as to those allegations specifically pertaining to themselves, which are based on their personal knowledge.

## NATURE OF THE ACTION

1.      Clearblue sells a Menopause Stage Indicator ("Menopause Test") that supposedly indicates your menopause stage by measuring your hormone FSH (follicle stimulating hormone) levels. The Menopause Test consists of 5 test sticks that measure FSH in urine that Clearblue claims will indicate your menopause stage as: pre-, early peri-, late peri- or postmenopause.[1]

2.      While Clearblue touts that its Menopause Test can indicate your menopause stage by measuring FSH, in fact, FSH levels cannot indicate menopause and have nothing to do with treatment of the symptoms of menopause. As experts in the field explain, measuring FSH is not useful for indicating menopause because FSH levels vary unpredictably in the lead up to menopause. Instead, pattern of menstrual bleeding is the only useful datapoint in indicating a menopause transition, or menopause. As FSH levels cannot indicate a menopause stage as Clearblue claims, the Menopause Test is worthless.

3.      Although measuring FSH levels in urine cannot indicate stages of menopause as Clearblue advertises on the label of its Menopause Test, Clearblue exploits mid-life women by selling them useless Menopause Tests for $20 to $30.

4.      By using this deceitful scheme to sell useless Menopause Tests, Defendants harmed Plaintiffs and similarly situated purchasers who purchased the Menopause Test based on Defendants' fraudulent claim that it was useful in indicating menopause. Accordingly, Plaintiffs bring this action for violation of nationwide and California consumer protection laws on behalf of themselves and all

---

[1] *See, e.g.*, Clearblue Menopause Stage Indicator "Questions and answers" (last accessed Oct. 24, 2024), https://perma.cc/UM9Y-4CE5.

CLASS ACTION COMPLAINT

1  others similarly situated to obtain monetary damages for themselves and other similarly situated
2  purchasers.

3  **JURISDICTION AND VENUE**

4  5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
5  § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the
6  proposed classes are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100
7  members of the putative class, and at least one class member is a citizen of a state different than
8  Defendants. Complete diversity also exists between at least one plaintiff and Defendant.

9  6.      This Court has personal jurisdiction over Defendants because a substantial portion of
10  the events giving rise to Plaintiffs' claims occurred in California, including their purchases of the
11  Clearblue Menopause Test.

12  7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial
13  part of the events or omissions giving rise to the claim occurred in this District.

14  **PARTIES**

15  8.      Plaintiff Cassandra Marshall is a citizen of California, residing in Stanislaus County.
16  While living in Marin County, Plaintiff Marshall purchased two packages of the Clearblue
17  Menopause Test for her personal use in or around August and September 2023 from a Rite Aid store
18  in San Rafael, California. Prior to making her purchase, Plaintiff Marshall viewed a social media
19  advertisement for the Clearblue Menopause Test and saw Defendants' claim that the Clearblue
20  Menopause Test was useful in indicating menopause and menopause stage. Plaintiff Marshall also
21  viewed the Clearblue Menopause Test packaging, which makes the same claim, at the Rite Aid store
22  where she made her purchases. Based on this representation, Plaintiff Marshall purchased the
23  Clearblue Menopause Test. Defendants' representation that it was effective and useful for indicating
24  menopause stage was a substantial factor in her decision to purchase the Clearblue Menopause Test.
25  Had Plaintiff Marshall known that the Clearblue Menopause Test was not useful in indicating
26  menopause or menopause stage, she would not have purchased the Clearblue Menopause Test.

27
28

9.      Plaintiff Raquel Riley is a citizen of California, residing in Alameda County. Plaintiff Riley purchased the Clearblue Menopause Test for her personal use in or around October 2023 from a CVS store in Fremont, California. Prior to making her purchase, Plaintiff Riley viewed a television advertisement for the Clearblue Menopause Test and saw Defendants' claim that the Clearblue Menopause Test was useful in indicating menopause and menopause stage. Plaintiff Riley also viewed the Clearblue Menopause Test packaging, which makes the same claim, when she made her purchase at CVS. Based on this representation, Plaintiff Riley purchased the Clearblue Menopause Test. Defendants' representation that it was effective and useful for indicating menopause stage was a substantial factor in her decision to purchase the Clearblue Menopause Test. Had Plaintiff Riley known that the Clearblue Menopause Test was not useful in indicating menopause or menopause stage, she would not have purchased the Clearblue Menopause Test.

10.     Defendant Procter & Gamble Company is incorporated in the State of Ohio, with a principal place of business in Cincinnati, Ohio. Procter & Gamble distributes the Clearblue Menopause Test in the United States. Defendant Procter & Gamble markets the Clearblue Menopause Test through its social media accounts,[2] on its website,[3] and on its blog.[4]

11.     Defendant SPD Swiss Precision Diagnostic GmbH is a Swiss company with its

---

[2] *See, e.g.*, Procter & Gamble, LinkedIn, https://perma.cc/BP3V-2NPT (last accessed Oct. 10, 2024) (stating "Our latest #PGInnovation, the Clearblue Menopause Stage Indicator, is an easy-to-use, at-home test kit that works with a free app to help determine a woman's likely stage of menopause"); @ProcterGamble, X (Oct. 19, 2023, 7:30 a.m.), https://perma.cc/6S9S-29VE ("Our latest #PGInnovation, the Clearblue Menopause Stage Indicator is helping women turn up the volume on menopause conversations."); @ProcterGamble, X (Oct. 19, 2023, 7:55 a.m.), https://perma.cc/CM3E-2J47 ("The easy-to-use, at-home test kit comes with five tests and access to a free app that can help determine a woman's likely stage of menopause and provide information to share with healthcare providers."); @ProcterGamble, X (Oct. 19, 2023 8:20 a.m.), https://perma.cc/VM6A-RNXN ("Learn more about how the Clearblue Menopause Stage Indicator works on our blog"); @ProcterGamble, Instagram (Oct. 19, 2023), https://perma.cc/C9T7-SF2S.

[3] *Clearblue Launches First Ever At-Home Product That Can Indicate a Woman's Current Stage of Menopause*, Procter & Gamble (Aug. 29, 2023), https://perma.cc/CT96-F554; *Gabrielle Union Joins Clearblue in Latest Campaign to Turn Up the Volume on Menopause*, Procter & Gamble (Nov. 9, 2023), https://perma.cc/5MGJ-RPLN.

[4] *P&G Innovates for Any Age and Every Stage of Life*, Procter & Gamble (Oct. 19, 2023), https://perma.cc/K2QF-M6R8.

CLASS ACTION COMPLAINT

principal place of business in Geneva, Switzerland. SPD Swiss Precision Diagnostic GmbH manufactures the Clearblue Menopause Test and holds the trademark to the Clearblue brand.

12.    At all times relevant to the allegations in this matter, each Defendant acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendant within the course and scope of the agency, regarding the acts and omissions alleged.

<u>**ALLEGATIONS COMMON TO ALL CLASS MEMBERS**</u>

13.    Defendants' fraudulent scheme to sell the Clearblue Menopause Test as a tool for indicating menopause violates California's and other states' consumer protection laws. As detailed below, Defendants' claim that their Menopause Test is capable of indicating a woman's menopause stage by measuring FSH is false and misleading because, in fact, experts in the field confirm that FSH measurements are useless in indicating menopause or the menopause transition.

**I.    Clearblue uniformly advertises that its Menopause Test will indicate users' menopause stage.**

14.    Clearblue launched their Menopause Test in or around August 2023.

15.    Clearblue describes the "Menopause Test" as a "Menopause Stage Indicator" on the front, side, and back of the Clearblue Menopause packaging. *See* Exhibit A (Clearblue packaging).

16.    The Clearblue Menopause Test requires users to gather five urine samples over a 10-day span that the user enters into a "free" phone application. Clearblue emphasizes that using the five provided test sticks to measures FSH combined with a free phone App "indicates your likely menopause stage."

17.    As shown below, the front of the Clearblue Menopause Test packaging depicts an image of the test showing that the test can indicate whether a user is in "Premenopause," "Early Perimenopause," "Late Perimenopause," or "Postmenopause."

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

1    18.    Similarly, as shown below, the side panel provides three-step instructions to find out

2   the user's likely menopause stage, stating: "(1) Download Free app … (2) Test your FSH … and

3   (3) Find out your stage" and the lists the following menopause stages: Premenopause, Early

4   perimenopause, Late perimenopause, Postmenopause.



CLASS ACTION COMPLAINT

19.    This same message, that Clearblue's urine test that measures FSH is useful in indicating menopause stages, is likewise consistently made by online vendors like amazon.com., target.com, cvs.com, walgreens.com, and Kroger.com that depict images of Clearblue's packaging and other marketing statements on their websites. *See* Exhibit A (examples of websites depicting identical claims).

20.    Plaintiffs and the similarly situated class members thus bought Clearblue's so-called Menopause Stage Indicator based on their reasonable belief it was effective for its sole stated purpose: indicating menopause.[5]

## II.    Clearblue's claim that its Menopause Test indicates a menopause stage is false and misleading.

21.    Contrary to Clearblue's claims that measuring FSH with its test sticks will indicate users' menopause stage, hormone tests are not useful because the FSH levels they measure do not factor into the determination of menopause stage at all. Instead, the only way to determine menopause is through one year of no menstruation. Stated otherwise, the only datapoint that is relevant to the determination of menopause stage is the pattern of menstrual bleeding—meanwhile FSH fluctuates widely and cannot indicate anything.

22.    Clearblue's use of the stages—Premenopausal, Early Perimenopause, Late Perimenopause, and Menopause—is also false, misleading, and confusing. Clearblue derives these purported menopause stages from the Study of Women's Health Across the Nation ("SWAN"). But the staging criteria from SWAN's menopause stages were for research purposes and are not clinically relevant to real women.[6] Further, the SWAN stages depended only on bleeding pattern and did and

---

[5] For example, dictionary.com defines "indicates" in the medical context as "to show the presence of (a condition)." *Indicate*, Dictionary.com (Oct 4, 2024), https://perma.cc/G3WY-6MNN. Thus, consumers reasonably believe that the test is capable of showing the presence of users' menopause stage.

[6] In a clinical setting, the time leading up to menopause is simply referred to as the "menopause transition" and is not divided into 4 stages. Dr. Jen Gunter, *Don't Waste Your Money on the Clearblue Menopause Journey Test*, THE VAJENDA (Sept. 8, 2023), https://perma.cc/22XK-Q3TX (citing SWAN staging criteria).

did not consider FSH levels at all—as, again, bleeding pattern is the only indicator for menopause.[7] Clearblue thus cobbles together FSH and SWAN's menopause stages—that were for research and that had nothing to do with FSH—to create a false aura of scientific credibility for its useless FSH urine test sticks.

**A.    Experts agree that measuring FSH levels is not a useful indicator of menopause.**

23.    Measuring FSH is not useful because FSH levels vary unpredictably in the lead up to menopause.

24.    The Food and Drug Administration has explained that testing FSH does not indicate menopause stages because FSH levels may rise and fall during the normal menstrual cycle. Specifically, according to the FDA, an at-home "menopause test" "does not detect menopause or perimenopause." Instead, it detects only FSH levels, which "may rise and fall during your menstrual cycle."[8]

25.    Multiple medical doctors have similarly commented that Clearblue's hormone test's measurement of FSH is not useful.

26.    As one obstetrician-gynecologist, Dr. Jen Gunter, Clearblue's Menopause test is harmful because "It's a waste of money" and the Clearblue test could even cause confusion in accessing needed menopause therapies. She explains that FSH is not useful for indicating menopause because it fluctuates unpredictably:

> Someone can have four months of no bleeding, have an FSH level that looks like menopause, and then boom, they ovulate. That is why we wait for one year of no bleeding. Testing just can't account for the unpredictability of the last year or so of ovulation.[9]

---

[7] In that regard, according to SWAN, "Premenopausal" is indicated if there is "no change in bleeding pattern," "Early perimenopause" is indicated by "change in length of bleed or inter bleed interval," "Late perimenopause" is indicated by "no bleeding in 3-11 months," and "Menopause" is indicated by "no bleeding in 12 months." *Id.*
[8] *Menopause*, FDA (Sept. 27, 2018), https://web.archive.org/web/20250123010133/https://www.fda.gov/medical-devices/home-use-tests/menopause.
[9] Gunter, *supra* n.6.

CLASS ACTION COMPLAINT

27. Doctors at Cedars-Sinai agree that Clearblue's menopause test is worthless. In an article answering the question "should you take an at-home menopause test," doctors at Cedars-Sinai agree that you should not, explaining that "[i]t isn't possible to verify the presence of menopause with a blood or urine test."[10] Instead, "[t]he diagnosis of menopause is clinical, so even clinicians shouldn't rely on lab tests to make the final diagnosis," said Jessica Chan, MD, a reproductive endocrinologist at Cedars-Sinai. "It's a diagnosis you make in retrospect, when a woman hasn't had a menstrual cycle in 12 months." At-home menopause tests check the levels of FSH in the urine. According to the Cedars-Sinai article, however, because FSH levels fluctuate during a woman's cycle, it's not possible to get an accurate snapshot of someone's menopause status by checking these hormones. As Keren Lerner, MD, a Cedars-Sinai OB-GYN explained, "[i]n menopause, FSH goes up and estradiol levels drop low, but in a normal cycle, FSH fluctuates anyway, which could make at-home test results inaccurate."[11]

28. Dr. Ekta Kapoor, assistant director of the Mayo Clinic Center for Women's Health explained to the New York Times that when patients ask her for an FSH test, she talks them out of it—because if a woman's cycle history suggests she might be menopausal, no matter what the FSH results say, symptom management options, such as hormone therapy, don't change.[12]

29. Anna Barbieri, MD, a gynecology and menopause specialist in New York, similarly reported to Motherly that while there are many reasons the test of FSH levels could be inaccurate that it is important to "[r]emember, the only time that FSH goes high and stays high is in the postmenopause phase—when it has been a full 12 months without a menstrual period"—and while in that case the test will be accurate—"that is when the test has the least utility because it is very easy for you or your doctor to know when it has been 12 months without a menstrual period. We don't

---

[10] Lisa Fields, *Should You Take an At-Home Menopause Test?*, CEDARS-SINAI BLOG (May 9, 2024), https://perma.cc/83GE-4UQZ.
[11] *Id.*
[12] Alisha Haridasani Gupta, *Can a New At-Home Test Tell You if You're in Menopause?*, THE NEW YORK TIMES (Oct. 2, 2023), https://perma.cc/5GNV-T5VM.

CLASS ACTION COMPLAINT

1  need any lab testing to tell us that!"[13] In other words, Clearblue's menopause test will only accurately

2  stage menopause once it has become obvious that the user is in the postmenopausal phase without

3  any hormone testing.

4       30.    Stephanie S. Faubion, MD, a professor and chair of the Department of Medicine at

5  Mayo Clinic in Jacksonville, FL likewise reported to Motherly that symptoms—not FSH levels—

6  guide treatment because "FSH blood level is typically all over the place in perimenopause and may

7  vary from one day to the next," such that FSH level "isn't useful information."[14]

8       31.    BBC similarly reported that "top UK doctors say" that "[w]omen are wasting their

9  time and money buying do-at-home menopause testing kits."[15] Leading menopause and hormone

10  doctor Annice Mukherjee, from the Society of Endocrinology, told BBC that FSH urine tests were

11  "another example of exploitation of mid-life women by the commercial menopause industry, who

12  have financial conflicts of interest." She accused them of using misleading information about "FSH

13  sometimes being a helpful marker of menopause" and called the perimenopause a "hormone

14  rollercoaster." "It's not helpful for women to access [FSH] directly," she said. "It is not a reliable

15  marker of perimenopause and can cause[] more confusion among women taking the test." BBC added

16  that "NHS guidelines also discourage FSH testing for over-45s with classic menopausal symptoms -

17  such as hot flushes - because it adds nothing diagnostically."

18       32.    WebMD similarly reports that FSH is not a reliable marker of menopause explaining

19  that "The FSH test only tells you if you have a high FSH level. It doesn't tell you if you are definitely

20  in menopause (or premenopausal or perimenopausal)."[16]

21       33.    Another commentator, Dr. Bev Young, agrees, cautioning women not to waste their

22  money on Clearblue's Menopause test. Dr. Young explains that FSH "is not a reliable marker for

---

[13] Kristen Fischer, *Should you try an at-home menopause test?*, MOTHERLY (Sept. 5, 2023), https://perma.cc/EEC5-W5V8.

[14] *Id.*

[15] Michelle Roberts, *Shop-bought menopause tests not worth it, women advised*, BBC (June 9, 2022), https://perma.cc/T9HT-XM92.

[16] *Home Menopause Testing Kits: Are They Worth It?*, WebMD (May 27, 2024), https://perma.cc/K9ME-5M2Z.

10

CLASS ACTION COMPLAINT

1 menopause" as "[i]ts levels vary greatly from person to person, and some individuals may experience

2 low FSH levels even after their final period."[17] She also emphasizes that "[h]ealthcare providers base

3 treatment decisions on symptoms rather than hormone levels or specific phases of menopause" and

4 that "Diagnosis and treatment should be based on symptoms rather than test results."

5     34.     Thus, as numerous experts in the field confirm, Defendants' advertising of its FSH

6 urine test as capable of indicating menopause stage is false and misleading as the Clearblue

7 Menopause Test is actually a worthless gimmick that harms consumers who waste their money on it.

8 Indeed, Defendants' conduct is particularly egregious because the confusion its false advertising

9 causes could complicate or interfere with users getting treatment for their symptoms from medical

10 professionals.

## CLASS ACTION ALLEGATIONS

12     35.     Plaintiffs incorporate and reallege the above paragraphs.

13     36.     Plaintiffs Cassandra Marshall and Raquel Riley bring this action on behalf of

14 themselves and the members of the proposed Nationwide Class, which consists of:

> All persons in the United States that purchased the Clearblue Menopause Test for personal, family, or household purposes from the beginning of the applicable statutory period through the date notice is disseminated.
>
> Excluded from the Nationwide Class are Defendants; any entity in which Defendants have a controlling interest; and any legal representative, heir or assign of Defendants. Also excluded from the Nationwide Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

37.     Plaintiffs further seek to represent the proposed California Sub-Class which consists of:

> All persons who purchased the Clearblue Menopause Test for personal, family, or household purposes in the State of California from the beginning of the applicable statutory period through the date notice is disseminated.
>
> Excluded from the California Sub-Class are Defendants; any entity in which Defendants have a controlling interest; and any legal representative, heir or assign of Defendants. Also excluded from the California Sub-Class are any federal, state

---

[17] Dr. Bev Young, *We Agree with Dr. Gunter – Definitely, Don't Waste Your Money on the Clearblue Menopause Pee Test*, BRIA (Sept. 18, 2023), https://perma.cc/3MSQ-NFRT.

11

or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

38.    Plaintiffs reserve the right to amend or modify the definitions of the proposed Nationwide Class and California Sub-Class (collectively, the "Classes") after having an opportunity to conduct discovery.

39.    The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the precise number which is within the knowledge of and can be ascertained only through Defendants' records.

40.    There are numerous questions of fact and law common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

      a.    Whether Defendants' advertising and sale of the Clearblue Menopause Test was false and misleading;

      b.    Whether Defendants' conduct is likely to deceive an objectively reasonable consumer;

      c.    Whether Defendants' marketing conduct described herein constitutes violations of the laws asserted;

      d.    Whether Defendants' omissions and misrepresentations regarding the value of its Menopause Test described herein constitute unfair or deceptive acts or practices in violation of state consumer protection laws;

      e.    Whether Plaintiffs and the members of the Classes have suffered damages as a result of Defendants' actions and the amount thereof;

      f.    Whether Plaintiffs and the members of the Classes are entitled to damages;

      g.    Whether the Clearblue Menopause Test has any value;

      h.    Whether Plaintiffs and the members of the Classes are entitled to other appropriate remedies including attorneys' fees and costs.

CLASS ACTION COMPLAINT

41.    Plaintiffs' claims are typical of the claims of the members of the Classes because Plaintiffs, like all members of the Classes, were exposed to Defendants' false and misleading marketing, purchased Defendants' worthless product, and suffered a loss as a result of that purchase.

42.    Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes and have retained counsel who are experienced in prosecuting class actions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

43.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable.

44.    While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual members of the Classes prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

## <u>COUNT I</u>

**Violation of California Consumer Legal Remedies Act, Cal. Civil Code § 1750, *et seq.***

**(On Behalf of Plaintiffs Cassandra Marshall, Raquel Riley, and the California Sub-Class)**

45.    Plaintiffs Cassandra Marshall and Raquel Riley incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

46.    This cause of action is brought pursuant to the Consumer Legal Remedies Act, California Civil Code § 1750 ("CLRA"). Plaintiffs are each a "consumer" as defined by California Civil Code § 1761(d). The Clearblue Menopause Test is a "good" within the meaning of the CLRA.

47.    Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiffs and the

CLASS ACTION COMPLAINT

California Sub-Class which were intended to result in, and did result in, the sale of the Clearblue Menopause Test:

>    (5)    Representing that [the Clearblue Menopause Test has] . . . approval, characteristics, . . . [and] benefits . . . which [it does] not have . . .

>    (7)    Representing that [the Clearblue Menopause Test is] of a particular standard, quality or grade . . . if [it is] of another.

>    (9)    Advertising goods . . . with intent not to sell them as advertised.

>    (16)    Representing that [the Clearblue Menopause Test has] been supplied in accordance with a previous representation when [it has] not.

48.    Defendants violated the CLRA by representing and failing to disclose material facts on the Clearblue Menopause Test's labeling and packaging and associated advertising, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose. Such conduct began in or around August 2023 and is ongoing.

49.    Pursuant to § 1782 of the CLRA, Plaintiffs sent notification, a true and correct copy of which is attached hereto, as Exhibit B, to Defendants in writing by certified and/or registered mail of the particular violations of § 1770 of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act.

50.    Since then, the notice period—from the time Plaintiffs' counsel previously sent notification as required by the CLRA to the date of filing this Complaint—has run.  Defendants have not rectified the notified issues within 30 days of the date of written notice pursuant to § 1782(a) of the CLRA. Accordingly, Plaintiffs now seek actual, punitive, and statutory damages as appropriate.

51.    Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit C are affidavits showing that this action has been commenced in the proper forum.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT II**

**Violation of California Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq.* (On Behalf of Plaintiffs Cassandra Marshall, Raquel Riley, and the California Sub-Class)**

52.    Plaintiffs Cassandra Marshall and Raquel Riley incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

53.    Business & Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." For the reasons discussed above, Defendants have violated each of these provisions of Business & Professions Code § 17200.

54.    Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and the other members of the California Sub-Class. Plaintiffs have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Specifically, Defendants' material representations and omissions induced reasonable purchasers, like Plaintiffs, to buy the Menopause Test, which they otherwise would not have purchased.

55.    **Unlawful prong.** In the course of conducting business, Defendants committed "unlawful" business practices by violating the CLRA, as set forth in Count I, above.

56.    **Unfair prong.** Defendants' actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engaged in false advertising, misrepresented, and omitted material facts regarding the Clearblue Menopause Test, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers. Defendants conduct of injecting pseudoscience about menopause—such as by claiming that FSH is relevant and that there are defined menopause stages when there are not—into the marketplace to sell useless FSH test sticks touted as a Menopause Indicator is of no benefit and is unfair to the midlife consumer women that Clearblue seeks to take advantage of as they enter the vulnerable time of their menopause transition.  This conduct constitutes violations of the "unfair" prong of Business & Professions Code § 17200, *et seq.*

57.    **Fraudulent prong.** For the reasons detailed above, Defendants' actions are "fraudulent" because starting in or around August 2023, Defendants falsely and misleadingly claim that the Clearblue Menopause Test is capable of indicating menopause stage and menopause when, in fact, FSH is a useless measurement for indicating menopause stage and menopause. Defendants' actions, claims, nondisclosures, and misleading statements, as more fully set forth above, were also false, misleading, and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq.*

58.    Plaintiffs, on behalf of themselves, the California Sub-Class, and the California public, seek restitution for Defendants' violations of the UCL.

31.    **Inadequate Remedy at Law.** Legal remedies available to Plaintiff and Class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff and Class members fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money the defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Due to these difference in proof and certainty, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law for damages. Even if legal remedies may be available, Plaintiff seeks equitable remedies in the alternative to legal remedies which are as of yet uncertain.

CLASS ACTION COMPLAINT

## COUNT III

### VIOLATIONS OF THE CONSUMER PROTECTION ACTS OF 50 STATES

### (In the alternative, by All Plaintiffs on Behalf of the Nationwide Class)

59. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

60. Plaintiffs also bring statutory consumer protection claims pursuant to consumer protection laws of the states of residence of Class Members identified below to the extent they are not in true conflict with the laws of California's CLRA and UCL.

61. The following consumer protection acts are collectively referred to herein as the "Consumer Protection Acts," all of which were enacted and designed to protect consumers against unlawful, fraudulent, and/or unfair business acts and practices.

       a.      ALA. CODE § 8-19-1 *et seq.* (Alabama);

       b.      ALASKA STAT. ANN. § 45.50.471 *et seq.* (Alaska);

       c.      ARIZ. REV. STAT. ANN. § 44-1521 *et seq.* (Arizona);

       d.      ARK. CODE ANN. § 4-88-101 *et seq.* (Arkansas);

       e.      CAL. CIV. CODE §1750 *et seq.* (California);

       f.      COLO. REV. STAT. ANN. § 6-1-101 *et seq.* (Colorado);

       g.      CONN. GEN. STAT. ANN. § 42-110a *et seq.* (Connecticut);

       h.      DEL. CODE ANN. tit. 6, § 2511 *et seq.* (Delaware);

       i.      D.C. CODE ANN. § 28-3901 *et seq.* (District of Columbia);

       j.      FLA. STAT. ANN. § 501.201 *et seq.* (Florida);

       k.      GA. CODE ANN. § 10-1-370 *et seq.* and GA. CODE ANN. § 10-1-390 et seq. (Georgia);

       l.      HAW. REV. STAT. ANN. § 480-1 *et seq.* and HAW. REV. STAT. ANN. § 481A-1 et seq. (Hawaii);

       m.      IDAHO CODE ANN. § 48-601 *et seq.* (Idaho);

       n.      815 ILCS 505/1 *et seq.* (Illinois);

o.      IND. CODE ANN. § 24-5-0.5-1 *et seq*. (Indiana);

p.      IOWA CODE 714H.1, *et seq*. (Iowa);

q.      KAN. STAT. ANN. § 50-623 *et seq*. (Kansas);

r.      KY. REV. STAT. ANN. § 367.110 *et seq*. (Kentucky);

s.      LA. STAT. ANN. § 51:1401 *et seq*. (Louisiana);

t.      MASS. GEN. LAWS, Ch. 93A (Massachusetts);

u.      ME. REV. STAT. tit. 5, § 205-A *et seq*. (Maine);

v.      MD. CODE ANN., COM. LAW § 13-101 *et seq*. (Maryland);

w.      MICH. COMP. LAWS ANN. § 445.901 *et seq*. (Michigan);

x.      MINN. STAT. ANN. § 325F.68 *et seq*., MINN. STAT. ANN. § 325D.09 *et seq*., MINN. STAT. ANN. § 325D.43 *et seq*., and MINN. STAT. ANN. § 325F.67 (Minnesota);

y.      MISS. CODE ANN. § 75-24-1 *et seq*. (Mississippi);

z.      MO. ANN. STAT. § 407.010 *et seq*. (Missouri);

aa.     MONT. CODE ANN. § 30-14-101 *et seq*. (Montana);

bb.     NEB. REV. STAT. ANN. § 59-1601 *et seq*. (Nebraska);

cc.     NEV. REV. STAT. ANN. § 41.600 and NEV. REV. STAT. ANN. §598.0903 *et seq*. (Nevada);

dd.     N.H. REV. STAT. ANN. § 358-A:1 *et seq*. (New Hampshire);

ee.     N.J. STAT. ANN. § 56:8-1 *et seq*. (New Jersey);

ff.     N.M. STAT. ANN. § 57-12-1 *et seq*. (New Mexico);

gg.     N.Y. GEN. BUS. LAW § 349 *et seq*. (New York);

hh.     N.C. GEN. STAT. ANN. § 75-1 *et seq*. (North Carolina);

ii.     N.D. CENT. CODE ANN. § 51-15-01 *et seq*. (North Dakota);

jj.     OHIO REV. CODE ANN. § 1345.01 *et seq*. (Ohio);

kk.     OKLA. STAT. ANN. tit. 15, § 751 *et seq*. (Oklahoma);

ll.     OR. REV. STAT. ANN. § 646.605 *et seq*. (Oregon);

CLASS ACTION COMPLAINT

mm.    73 PA. STAT. ANN. § 201-1 *et seq*. (Pennsylvania);

nn.    R.I. GEN. LAWS ANN. § 6-13.1-1 *et seq*. (Rhode Island);

oo.    S.C. CODE ANN. § 39-5-10 *et seq*. (South Carolina);

pp.    S.D. CODIFIED LAWS § 37-24-1 *et seq*. (South Dakota);

qq.    TENN. CODE ANN. § 47-18-101 *et seq*. (Tennessee);

rr.    TEX. BUS. & COMM. CODE, tit. 2, § 17 *et seq*. (Texas);

ss.    UTAH CODE ANN. § 13-11-1 *et seq*. (Utah);

tt.    VT. STAT. ANN. tit. 9, § 2451 *et seq*. (Vermont);

uu.    VA. CODE ANN. § 59.1-196 *et seq*. (Virginia);

vv.    WASH. REV. CODE ANN. § 19.86.010 *et seq*. (Washington);

ww.    W.VA. CODE ANN. § 46A-6-101 *et seq*. (West Virginia);

xx.    WIS. STAT. ANN. § 100.20 (Wisconsin); and

yy.    WYO. STAT. ANN. § 40-12-101 *et seq*. (Wyoming)

62.    Defendants have engaged in deception, fraud, and unfair practices by their conduct and omissions described above. Accordingly, Defendants engaged in unfair or deceptive acts or practices as defined in the above Consumer Protection Acts, including: representing that the Menopause Test has characteristics, uses, benefits, and qualities which it does not have; representing that the Menopause Test is of a particular standard and quality when it is not; advertising the Menopause Test with intent not to sell it as advertised; and representing that the Menopause Test has been supplied in accordance with a previous representation when it has not.

63.    The facts misrepresented or not disclosed by Defendants to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Menopause Test. Had Defendants disclosed that the Menopause Test is not capable of indicating menopause stage and menopause, they would not have purchased the Menopause Test.

64.    Plaintiffs and all Class Members were injured as a result of Defendants' conduct in that they purchased the Menopause Test, which is not capable of indicating menopause stage and

menopause, and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Defendants' omissions regarding the Menopause Test, as set forth in this Complaint, and were material and likely to deceive a reasonable consumer. Examples include Defendants' representations that the Menopause Test is capable of indicating menopause stage and menopause when, in fact, FSH is a useless measurement for indicating menopause stage and menopause. By omitting or concealing information regarding the Menopause Test when making these statements (and others in its advertising), Defendants' statements were untrue or misleading.

65.    The injuries suffered by Plaintiffs and members of the Class are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that those Plaintiffs and Class Members should have reasonably avoided.

66.    The injuries of Plaintiffs and members of the Class were proximately caused by Defendants' fraudulent and deceptive business practices, and they are entitled to relief under the above-identified Consumer Protection Acts.

67.    Defendants' conduct in this regard was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiffs and other members of the Class and, as such, warrants the imposition of punitive damages.

## **PRAYER FOR RELIEF**

68.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

(a)    For an order certifying the Nationwide Class and the California Sub-Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as representatives of the Classes, and naming Plaintiffs' counsel as Class Counsel to represent the Classes;

(b)    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(c)    For an order awarding Plaintiffs and the proposed members of the Classes damages, including punitive damages;

CLASS ACTION COMPLAINT

1    (d)     For an order awarding Plaintiffs and the proposed members of the Classes

2    restitution;

3    (e)     For reasonable attorneys' fees, costs, and expenses;

4    (f)     For pre- and post-judgment interest on any amounts awarded; and

5    (g)     For such other and further relief as may be just and proper.

6    **<u>DEMAND FOR TRIAL BY JURY</u>**

7    Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

8

9    Dated: January 28, 2025          Respectfully submitted,

10                  */s/ Annick M. Persinger*

                      Annick M. Persinger (CA Bar No. 272996)

11                 **TYCKO & ZAVAREEI LLP**

                 1970 Broadway, Suite 1070

12                 Oakland, California 94612

13                 Tel: (510) 254-6808

                 Fax: (202) 973-0900

14                 *apersinger@tzlegal.com*

15

                 Shana H. Khader*

16                 Allison W. Parr*

                 Gemma Seidita (CA Bar No. 322201)

17                 **TYCKO & ZAVAREEI LLP**

                 2000 Pennsylvania Avenue, NW

18                 Suite 1010

                 Washington, District of Columbia 20006

19                 Tel: (202) 973-0900

20                 Fax: (202) 973-0950

                 *skhader@tzlegal.com*

21                 aparr@tzlegal.com

                 *gseidita@tzlegal.com*

22

23                 *Application for admission *pro hac vice*

                 forthcoming

24

25

26

27

28

CLASS ACTION COMPLAINT