LISA KOBIALKA (State Bar No. 191404)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
Email: lkobialka@kramerlevin.com

NORMAN C. SIMON (*admitted pro hac vice*)
EILEEN M. PATT (*admitted pro hac vice*)
IRENE WEINTRAUB (*admitted pro hac vice*)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Email: nsimon@kramerlevin.com
Email: epatt@kramerlevin.com
Email: iweintraub@kramerlevin.com

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CASSANDRA MARSHALL and RAQUEL RILEY, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>THE PROCTER & GAMBLE COMPANY AND SPD SWISS PRECISION DIAGNOSTICS GMBH,<br><br>Defendants. | Case No. 3:25-cv-00923-AMO<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: September 11, 2025<br>Time: 2:00 pm<br>Ctrm.: Courtroom 10, 19th Floor<br>Before: Hon. Araceli Martínez-Olguín |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................................... 2

III.  STANDARD ......................................................................................................... 5

IV.   ARGUMENT ........................................................................................................ 6

    A.    PLAINTIFFS FAIL TO PLEAD THAT REASONABLE CONSUMERS CAN BE DECEIVED IN THE MANNER ALLEGED, OR THAT THE CHALLENGED CLAIMS ARE FALSE ................................................................................. 6

        1.    The Full Context of the Label Dispels Plaintiffs' Theory of Falsity ..................... 7

        2.    Plaintiffs' Documents Contradict the Allegation that FSH Measurements are Useless ....................................................................................................... 8

        3.    Plaintiffs' Documents Refute their Speculation about the Product's Menopause Staging Criteria ........................................................................ 11

    B.    THE COMPLAINT FAILS TO PLEAD INJURY ............................................ 12

    C.    THE OMISSION-BASED CLAIMS MUST BE DISMISSED ........................... 14

    D.    PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF BECAUSE THEY HAVE AN ADEQUATE REMEDY AT LAW .................................... 16

    E.    EVEN IF PLAINTIFFS STATE A CLAIM, THE COMPLAINT MUST BE DISMISSED AS TO P&G AS AN IMPROPER DEFENDANT ........................ 17

        1.    The Court Lacks Personal Jurisdiction Over P&G. .............................................. 17

        2.    SPD's California Contacts Cannot Be Imputed to P&G. ...................................... 19

        3.    Plaintiffs Have Not Pled Facts that Plausibly Establish P&G's Liability ........... 20

V.    CONCLUSION ................................................................................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaei v. Gov't Emps. Ins. Co.*,
2021 WL 1165067 (S.D. Cal. Mar. 25, 2021) ........................................................14

*Aloudi v. Intramedic Rsch. Grp. LLC*,
729 F. App'x 514 (9th Cir. 2017) ..............................................................10 n.7

*Amba Mktg. Sys. v. Jobar Int'l, Inc.*,
551 F.2d 784 (9th Cir. 1977) ....................................................................17

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
904 F.3d 667 (9th Cir. 2018) ....................................................................21

*In re Apple Processor Litig.*,
2022 WL 2064975 (N.D. Cal. June 8, 2022) .......................................15 n.13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................15, 16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................11

*Big Sky Ventures I, L.L.C. v. Pac. Cap. Bancorp., N.A.*,
2008 WL 11334474 (C.D. Cal. May 6, 2008) ...................................14 n.12

*Bounthon v. Procter & Gamble Co.*,
2024 WL 4495501 (N.D. Cal. Oct. 15, 2024) (Martínez-Olguín, J.) ............................ *passim*

*Brookside Assocs. v. Rifkin*,
49 F.3d 490 (9th Cir. 1995) .....................................................................15

*Bryan v. Apple Inc.*,
2023 WL 2333893 (N.D. Cal. Mar. 2, 2023)..........................................16

*Bryan v. Del Monte Foods, Inc.*,
2024 WL 4866952 (9th Cir. Nov. 22, 2024)..............................................6

*Castillo v. Prime Hydration LLC*,
748 F. Supp. 3d 757 (N.D. Cal. 2024) (Martínez-Olguín, J.) .................................8, 12, 14, 17

*Chong v. Nestlé Water N. Am., Inc.*,
2021 WL 4938128 (9th Cir. Oct. 22, 2021)..............................................6

*Chowning v. Kohl's Dep't Stores, Inc.*,
733 F. App'x 404 (9th Cir. 2018) ...........................................................16

ii

*Daimler AG v. Bauman*,
　571 U.S. 117 (2014)............................................................................18

*Davidson v. Kimberly-Clark Corp.*,
　889 F.3d 956 (9th Cir. 2018) ...............................................................5

*Davidson v. Sprout Foods, Inc.*,
　106 F.4th 842 (9th Cir. 2024) .............................................................14

*Drum v. San Fernando Valley Bar Ass'n*,
　182 Cal. App. 4th 247 (2010).........................................................15 n.13

*Ebner v. Fresh, Inc.*,
　838 F.3d 958 (9th Cir. 2016) ...............................................................6

*Emery v. Visa Int'l Serv. Ass'n*,
　95 Cal. App. 4th 952 (2002) ..............................................................22

*Engel v. Novex Biotech LLC*,
　2015 WL 846777 (N.D. Cal. Feb. 25, 2015) ........................................7

*Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*,
　828 F.2d 1439 (9th Cir. 1987) .............................................................6

*In re Finjan Holdings, Inc.*,
　58 F.4th 1048 (9th Cir. 2023) ..............................................................5

*Gardner v. Starkist Co.*,
　418 F. Supp. 3d 443 (N.D. Cal. 2019) ...............................................19

*In re Gilead Scis. Sec. Litig.*,
　536 F.3d 1049 (9th Cir. 2008) ..............................................................5

*Gonzalez v. BAC Home Loans Servicing, LP*,
　2013 WL 1092890 (D. Ariz. Mar. 15, 2013), *aff'd sub nom.* 643 F. App'x 665 (9th Cir. 2016) ..........................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
　564 U.S. 915 (2011).............................................................................18

*Hernandez v. Mimi's Rock Corp.*,
　632 F. Supp. 3d 1052 (N.D. Cal. 2022) .............................................19

*Hodges v. King's Hawaiian Bakery W., Inc.*,
　2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) ...................................14 n.10

*Holland America Line Inc. v. Wartsila North America, Inc.*,
　485 F.3d 450 (9th Cir. 2007) ..............................................................20

*Int'l Shoe Co. v. Washington*,
　326 U.S. 310 (1945)..............................................................................17

iii

*Juniper Networks, Inc. v. Andrade*,
    2020 WL 5630023 (N.D. Cal. Sept. 21, 2020) ...........................................................19

*Kellman v. Whole Foods Mkt., Inc.*,
    313 F. Supp. 3d 1031 (N.D. Cal. 2018) ....................................................................20

*Krueger v. Wyeth, Inc.*,
    396 F.Supp.3d 931 (S.D. Cal. 2019) .........................................................................12

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017) ....................................................................................7

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) ..............................................................................................12

*La Rosa v. SPD Swiss Precision Diagnostics GmbH*,
    2025 WL 841687 (2d Cir. Mar. 18, 2025)..................................................................8

*Lopez v. Mead Johnson Nutrition Co.*,
    2025 WL 895213 (N.D. Cal. Mar. 24, 2025)............................................................10

*Manuel v. Pepsi-Cola Co.*,
    763 F. App'x 108 (2d Cir. 2019) ..........................................................................11 n.8

*Martinez v. Newsom*,
    46 F.4th 965 (9th Cir. 2022) ......................................................................................5

*McAuley v. Honey Pot Company LLC*,
    2024 WL 898715 (S.D.N.Y. Mar. 1, 2024) ..........................................................10 n.7

*McGee v. S-L Snacks Nat'l*,
    982 F.3d 700 (9th Cir. 2020) ...............................................................................11 n.8

*McGinity v. Procter & Gamble Co.*,
    69 F.4th 1093 (9th Cir. 2023) .................................................................................6, 8

*McWhorter v. Procter & Gamble Co.*,
    2025 WL 948061 (N.D. Cal. Mar. 28, 2025) (Martínez-Olguín, J.).............................7, 8, 15

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634 (2009) ..............................................................................................12

*Meyers v. McDonalds USA LLC*,
    2024 WL 5182203 (C.D. Cal. Apr. 18, 2024) ...........................................................21

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ........................................................................................6

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ......................................................................................5

DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS COMPLAINT

CASE NO.: 3:25-cv-00923-AMO

*Musgrave v. Taylor Farms Pac., Inc.*,
  2019 WL 8230850 (N.D. Cal. Feb. 20, 2019) .................................................................21 n.16

*In re Nexus 6P Prods. Liab. Litig.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018) ...........................................................................6

*Otto v. Abbott Lab'ys Inc.*,
  706 F. App'x 349 (9th Cir. 2017).................................................................................11 n.8

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) .....................................................................................19

*Reed v. NBTY, Inc.*,
  2014 WL 12284044 (C.D. Cal. Nov. 18, 2014)............................................................21

*Rivera v. Midway Importing, Inc.*,
  2018 WL 6438552 (C.D. Cal. Aug. 21, 2018)............................................................21 n.16

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) .......................................................................................18

*Sinatro v. Mrs. Gooch's Nat. Food Mkts., Inc.*,
  2023 WL 2324291 (N.D. Cal. Feb. 16, 2023) ..............................................................17, 19

*Smith v. Apple, Inc.*,
  2023 WL 2095914 (N.D. Cal. Feb. 17, 2023) ..............................................................17

*Smith v. Keurig Green Mountain, Inc.*,
  2020 WL 5630051 (N.D. Cal. Sept. 21, 2020) .............................................................16

*Steinberg v. Icelandic Provisions, Inc.*,
  2022 WL 220641 (N.D. Cal. Jan. 25, 2022), *aff'd*, 2023 WL 3918257 (9th Cir. June
  9, 2023) ........................................................................................................................16

*Stewart v. Screen Gems-EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) ...........................................................................17 n.14

*In re Tobacco Cases II*,
  240 Cal. App. 4th. 779 (2015) .....................................................................................12

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).....................................................................................................15

*Turner v. City & Cnty. of San Francisco*,
  788 F.3d 1206 (9th Cir. 2015) .....................................................................................5

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .......................................................................................2 n.1

*Walden v. Fiore*,
  571 U.S. 277 (2014).....................................................................................................18

v

*Warren v. Coca-Cola Co.*,
    670 F. Supp. 3d 72 (S.D.N.Y. 2023) ........................................................................15

*Whiteside v. Kimberly Clark Corp.*,
    108 F.4th 771 (9th Cir. 2024) ..................................................................6, 8 n.4

*Whyble v. Nature's Bounty Co.*,
    2025 WL 968784 (S.D.N.Y. Mar. 31, 2025) ..................................................11 n.8

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) .................................................................19, 22

*Wong v. Iovate Health Scis. U.S.A. Inc.*,
    2025 WL 821451 (E.D. Cal. Mar. 14, 2025) .....................................................8

*Yamasaki v. Zicam LLC*,
    2021 WL 4951435 (N.D. Cal. Oct. 25, 2021) ................................................7, 8

*Yan Mei Zheng-Lawson v. Toyota Motor Corp.*,
    2018 WL 2298963 (N.D. Cal. May 21, 2018) ..................................................21

**Statutes & Rules**

Article III ..............................................................................................................15

California Consumer Legal Remedies Act ................................................... *passim*

California Unfair Competition Law .............................................................. *passim*

Rule 8 .........................................................................................................5, 12, 21

Rule 9(b) ......................................................................................................... *passim*

Rule 12(b)(6) ..............................................................................................5, 11, 21

## NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE** that on September 11, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 10—19th Floor of the Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, defendants SPD Swiss Precision Diagnostics GmbH ("SPD") and The Procter & Gamble Company ("P&G") (together, "Defendants") will, and hereby do move this Court for an order dismissing with prejudice the Complaint (Dkt. No. 1).  This Motion to Dismiss is made pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(6), and, as to P&G only, 12(b)(2).  The Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and Consideration of Documents Incorporated by Reference ("Request for Judicial Notice") and associated Declaration of Norman C. Simon ("Simon Decl.") and the exhibits thereto, the Declaration of Keith Faber ("Faber Decl."), the Court's file and records in this action, and such argument as may be presented to the Court at the time of the hearing.

## STATEMENT OF THE ISSUES

Whether Plaintiffs in this putative class action alleging false advertising have stated a claim for relief where their theory disregards the plain language on the labels of the challenged product and is undermined by the documents that form the basis of their claims; they fail to plead deception or injury; and their claims suffer from other fundamental defects.

If so, whether Plaintiffs have established personal jurisdiction over and stated a claim for relief against a Defendant corporation in a putative class action alleging false advertising where such Defendant is not incorporated or headquartered in the forum state, and (contrary to Plaintiffs' allegations) does not distribute the challenged product.

DEFENDANTS' NOTICE OF MOTION                                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION</u>**

To allege that the label of the Clearblue Menopause Stage Indicator (the "Product") is false and misleading, Plaintiffs ignore its full context and the documents that form the basis of their claims, including guidance from the U.S. Food & Drug Administration ("FDA").

Plaintiffs allege the Product is mislabeled as being capable of "indicat[ing] your menopause stage by measuring [Follicle-Stimulating Hormone ("FSH")]," but ignore that the Product does not work by testing FSH alone. Rather, as the label makes clear, a user's "likely" menopause stage is indicated "**only** when test sticks are used *with FREE app*" which "combines 5 FSH test results *with other factors including cycle history and age* to calculate your likely menopause stage." (Italics added). Plaintiffs do not allege—much less point to facts disproving—that the app's unique algorithm is incapable of indicating likely menopause stage. Nor does, as Plaintiffs wrongly suggest, the Product "determin[e]" menopause stage akin to a "diagnosis"; rather, the label makes clear that the Product indicates a "likely" stage and "[a] confirmed menopause stage diagnosis can only be made by a physician after all clinical and laboratory findings have been evaluated."

Even under their flawed theory, Plaintiffs' claims fail. Plaintiffs theorize the label is false because "experts agree" FSH levels "do not factor into the determination of menopause stage at all." But this allegation is refuted by the very sources that form its basis, including guidance from the FDA stating that at-home kits measuring FSH in urine "*may help indicate if you are in menopause or perimenopause.*" Worse, Plaintiffs do not cite scientific literature to attempt to plead falsity—apart from the FDA, Plaintiffs rely on the opinion and speculation of a few bloggers and commentators, including an article sourced from a foreign country where the Product has never been sold.

Further, while Plaintiffs claim to be injured in the amount of the full purchase price because the Product is "worthless," this conclusory allegation is also contradicted by the documents that underpin their theory. For example, the FDA states that FSH tests "may help you be better informed about your current condition when you see your doctor." In sum, the Complaint should be dismissed in its entirety because Plaintiffs' claims depend on ignoring how the Product actually works and is labeled, and drawing unreasonable inferences from the documents on which they rely.

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

If the Court declines to dismiss the Complaint on these grounds, defendant P&G moves to dismiss for the additional reason that it is not a proper defendant. Plaintiffs cannot establish personal jurisdiction over or state a claim against P&G, which is incorporated and headquartered in Ohio, and has never designed, manufactured, labeled or (contrary to Plaintiffs' allegation) distributed the Product.

## II.    **STATEMENT OF FACTS**[1]

The Product works by capturing data through five FSH urine tests over the course of 10 days, and is designed for use with the accompanying app. Compl. Ex. A at p. 6-7. An algorithm in the app guides users on how and when to test, and combines FSH results with age and cycle history to calculate likely menopause stage. *Id.* Consumers can generate a personalized report of their FSH results combined with a log of their symptoms and cycle history to share with their healthcare professionals to have an informed conversation about menopause. *Id.* "Armed with [these] results, this Clearblue Menopause Stage Indicator kit can help [a woman] understand more about what is going on with [her] body and enable a more meaningful conversation with [her] doctor[.]" Compl. Ex. A at p. 7.

FSH levels increase as a woman enters menopause, according to the FDA, which regulates the Product. *See* Simon Decl. Ex. A ("FDA Guidance").[2] While at-home kits that measure FSH in urine "do not detect menopause or perimenopause" the FDA explains they "*may help indicate* if you are in menopause or perimenopause." *Id.* The FDA guides consumers to "use this test if you want to know if your symptoms, such as irregular periods, hot flashes, vaginal dryness, or sleep problems are part of menopause . . . This test may help you be better informed about your current condition when you see your doctor." *Id.* This is how the Product is labeled and marketed. *See* Compl. Ex. A at p. 5 ("Experiencing symptoms like period changes and hot flashes? The Clearblue Menopause Stage Indicator and free-to-download app make it easy to track symptoms and help you take control of your

---

[1]    The following facts, accepted as true solely for the purposes of this motion, are set forth in the Complaint (Dkt. No. 1), documents attached to or incorporated in the Complaint, and documents subject to judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[2]    As set forth in the accompanying Request for Judicial Notice, the Court may consider the FDA Guidance because it is incorporated by reference into the Complaint (at ¶ 24), or alternatively, it is subject to judicial notice.

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

menopause journey"); *id.* at p. 7 ("Generate a personalized report to print & share with your doctor.").

Plaintiffs nevertheless allege that the labeling of the Products is misleading, but they do so only by disregarding what the label actually says. Plaintiffs allege that they were misled by the label into believing that the Product can "indicate your menopause stage by measuring FSH" (Compl. ¶ 2), but they ignore that the Product does not work by testing FSH *alone*—it is the first and only product that *combines* FSH results with other factors to indicate the user's *likely* menopause stage. Immediately below the challenged claim ("Menopause Stage Indicator"), the front label makes clear that the "Likely menopause stage given **only** when test sticks are used with FREE app," and the side label further explains that the app "combines 5 FSH test results with other factors including cycle history and age to calculate your likely menopause stage." Compl. Ex. A. at p. 2 (emphasis in original); *see also id.* (back label explains: "app indicates your likely menopause stage¹").[3]

Plaintiffs do not allege that that the Product's app (which deploys an algorithm to combine these factors) cannot indicate the user's likely menopause stage. Instead, Plaintiffs assert that FSH *alone* cannot indicate menopause stage because FSH levels vary (*e.g.,* Compl. ¶ 23) and that FSH does not detect the presence of menopause (e.g., *id.* ¶ 27). But—setting aside that the Product does not work by testing FSH alone—Plaintiffs overlook that the label makes clear that "FSH levels can vary," and for that reason, the app requires tracking FSH levels "over several days" to determine if the "overall level is high, low or variable." *Id.* Ex. A. at p. 4. Plaintiffs do not allege that the Product's testing protocol—five tests over ten days as instructed by the app—and algorithm cannot account for normal FSH variation in indicating a likely menopause stage. Plaintiffs likewise ignore that the label makes clear that "a confirmed menopause stage diagnosis can only be made by a physician after all clinical and laboratory findings have been evaluated." *Id.* Ex. A. at p. 2. These panels of the label are pasted below:

---

[3]      Likewise, the webpage cited by Plaintiffs emphasizes that "You MUST download the free app before testing . . . If you do not use the app you will get FSH results only" "Why do I need to use an app? *The app combines FSH tests results with other factors including cycle history and age to indicate your likely menopause stage* [asterisk omitted] *If you only use the FSH tests you will not get a menopause stage result.*" Simon Decl. Ex. B (Clearblue Q&A, linked at Compl. n. 1).

DEFENDANTS' NOTICE OF MOTION                                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT





Plaintiffs assert conclusorily that the Product is "worthless" because FSH levels "do not factor into the determination of menopause stage at all" (Compl. ¶ 2, 21), but this bald allegation is refuted by

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

the very documents on which Plaintiffs rely to form the basis of their claims. For example, Plaintiffs cite the FDA Guidance (Compl. ¶ 24), which explains that FSH tests "*may help indicate if you are in menopause or perimenopause.*" Simon Decl. Ex. A. While "doctors would not use this test *by itself*," some at-home FSH tests "are identical to the one your doctor uses" in conjunction with "medical history, physical exam, and other laboratory tests[.]" *Id.* Hardly supporting an inference that the Product is "worthless," the FDA guidance confirms that FSH test kits "may help you be better informed about your current condition when you see your doctor." *Id.*

Nevertheless, Plaintiffs claim to be injured—and seek money damages and restitution—in the amount of the full purchase price of the Product to redress purported violations of California Consumer Legal Remedies Act ("CLRA") and California Unfair Competition Law ("UCL") on behalf of a putative California subclass, as well as violations of the "consumer protection acts of 50 states" on behalf of a putative nationwide class. Compl. ¶¶ 59-67.

## III. **STANDARD**

In order to "survive a rule 12(b)(6) motion to dismiss, a 'plaintiff must allege enough facts to state a claim to relief that is plausible on its face.'" *Turner v. City & Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (citation omitted). Courts do not accept as true allegations that contradict documents attached to the complaint, incorporated by reference, or properly subject to judicial notice. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *Martinez v. Newsom*, 46 F.4th 965, 971–72 (9th Cir. 2022); *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023) ("When a general conclusion in a complaint contradicts specific facts retold in a document ... incorporated by reference in the complaint ..., those specific facts are controlling."). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*, 536 F.3d at 1055. "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Because Plaintiffs' CLRA and UCL claims are "grounded in fraud, the [complaint] must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018).

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

Finally, Plaintiffs bear the burden of establishing that the Court has personal jurisdiction over each defendant—*see e.g.*, *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1441 (9th Cir. 1987)—and also "must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018).

## IV.    ARGUMENT

### A.    PLAINTIFFS FAIL TO PLEAD THAT REASONABLE CONSUMERS CAN BE DECEIVED IN THE MANNER ALLEGED, OR THAT THE CHALLENGED CLAIMS ARE FALSE

For claims arising under California's CLRA and UCL, Plaintiffs must show that reasonable consumers are likely to be deceived by the label. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). The reasonable consumer test requires Plaintiffs to "show that members of the public are likely to be deceived." *Id.* "This is not a negligible burden. To meet this standard, Plaintiffs must demonstrate more than a mere possibility that [the defendant's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner . . . [r]ather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled. Indeed, a plaintiff's unreasonable assumptions about a product's label will not suffice." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (citations omitted).

It is well-settled that a court "may conclude on the pleadings that no reasonable consumer would be misled by . . . product labels[.]" *Chong v. Nestlé Water N. Am., Inc.*, 2021 WL 4938128, at *1 (9th Cir. Oct. 22, 2021). In making this determination, a court considers the back and side panels of the label unless the front label is "unambiguously deceptive." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023). "[A] front label is ambiguous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation," including where there is "the presence of an asterisk" or other front-label statements creating an ambiguity. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 781, 785 (9th Cir. 2024); *Bryan v. Del Monte Foods, Inc.*, 2024 WL 4866952 (9th Cir. Nov. 22, 2024).

DEFENDANTS' NOTICE OF MOTION                                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

Additionally, Plaintiffs must plausibly allege that the challenged claim on the label is, in fact, false. "In the false advertising context, an advertising claim is false if it has actually been disproved, that is, if the plaintiff can point to evidence that directly conflicts with the claim." *Yamasaki v. Zicam LLC*, 2021 WL 4951435, at *4 (N.D. Cal. Oct. 25, 2021) (citation omitted). Thus, to state a claim, Plaintiffs must "allege specific facts pointing to actual falsehood" of the statements. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096–97 (9th Cir. 2017). Without such allegations, the claim collapses into a "lack of substantiation" claim that private litigants may not bring under California law. *See Engel v. Novex Biotech LLC*, 2015 WL 846777, at *3-4 (N.D. Cal. Feb. 25, 2015).

As set forth below, no reasonable consumer can be misled in the manner alleged because the full context of the label corrects Plaintiffs' misinterpretation. Nor have Plaintiffs plausibly alleged how the label is false, even under their flawed theory.

### 1.    The Full Context of the Label Dispels Plaintiffs' Theory of Falsity

As this Court recently confirmed, a plaintiff alleging false labeling is "not free to excise or ignore words on the label to manufacture customer confusion." *McWhorter v. Procter & Gamble Co.*, 2025 WL 948061, at *7 (N.D. Cal. Mar. 28, 2025) (Martínez-Olguín, J.). But that is precisely what Plaintiffs do here. While they theorize that the Product name misleads reasonable consumers into believing that it "indicates your menopause stage by measuring FSH" (Compl. ¶ 2), that is not what the label actually says. The Product does not work by testing FSH alone; rather, the front label makes clear that a user's "likely" menopause stage is given "**only** when test sticks are used with FREE app," and the side label explains that the app "combines 5 FSH test results with other factors including cycle history and age to calculate your likely menopause stage." Compl. Ex. A. at p. 2 (emphasis in original). Nor does, as Plaintiffs wrongly suggest, the Product "determin[e]" menopause stage akin to a doctor's "diagnosis" (*id.* ¶¶ 21, 27); rather, the front label makes clear that only a "likely" stage is provided and includes a prominent asterisk-like symbol directing consumers to "see sides of pack" which state: "A confirmed menopause stage diagnosis can only be made by a physician after all clinical and laboratory findings have been evaluated." *Id. See supra* p. 4. The side panel is properly

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

considered here, because Plaintiffs do not allege that the front label "unambiguously" conveys the alleged false message. *McGinity*, 69 F.4th at 1098.[4]

Accordingly, Plaintiffs' claim is implausible because the side panel dispels their misinterpretation of the front label as promising a product that indicates a definitive menopause stage by measuring FSH. *See McWhorter*, 2025 WL 948061, at *7 (dismissing complaint where plaintiff's theory of falsity "reads [ ] words . . . out of the labels at issue" and back-panel statements dispelled misinterpretation of claim); *Castillo v. Prime Hydration LLC*, 748 F. Supp. 3d 757, 771-72 (N.D. Cal. 2024) (Martínez-Olguín, J.) (alleged misinterpretation of label dispelled by ingredient list); *Wong v. Iovate Health Scis. U.S.A. Inc.*, 2025 WL 821451 (E.D. Cal. Mar. 14, 2025) (dismissing complaint; back label clarified that protein content advertised on front label assumes that products will be combined with milk); *La Rosa v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 841687, at *3 (2d Cir. Mar. 18, 2025) (affirming dismissal; reasonable consumers cannot believe that accuracy of "ovulation" test refers to "actual ovulation" where side panel of Clearblue product confirmed that it "detect[s] surges in the LH hormone, a strong predictor of ovulation, not ovulation itself.").

Plaintiffs do not allege that that the Product's app—which deploys an algorithm to combine FSH measurements and other factors—cannot indicate the user's likely menopause stage. In fact, the Complaint does not confront the app's algorithm at all, and one of the bloggers on which Plaintiffs rely concedes that she "can't tell you about the reliability of this approach." Simon Decl. Ex. C (*Vajenda* blog post, cited at Compl. ¶ 26). Because Plaintiffs do not even allege that the Product's unique app and algorithm cannot yield a likely menopause stage, much less "point to evidence that directly conflicts" with this claim, the Complaint should be dismissed. *Yamasaki*, 2021 WL 4951435, at *4.

### 2. Plaintiffs' Documents Contradict the Allegation that FSH Measurements are Useless

Even if consumers could reasonably believe that the Product works by testing FSH alone (they could not), Plaintiffs still fail to adequately plead falsity. In an effort to raise a plausible inference that

---

[4]     Nor could Plaintiffs credibly make such allegation, since reasonable consumers reading the front label statements described above "necessarily require more information before reasonably concluding" that the Product determines menopause stage by testing FSH. *See Whiteside*, 108 F.4th at 781; *id.* at 785 ("the presence of an asterisk alone puts a consumer on notice that there are qualifications or caveats, making it unreasonable to assume" the alleged false message).

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

the Product label is misleading because FSH levels "do not factor into the determination of menopause stage *at all*" (Compl. ¶ 21), Plaintiffs rely on several documents that they claim show a consensus among "experts." *Id.* at ¶¶ 23-33 (citing documents).[5]  But Plaintiffs' documents actually refute this very inference.

The first expert on which Plaintiffs rely is the FDA, which contradicts Plaintiffs' conclusory assertion that FSH levels are irrelevant to menopause.  The FDA notes, "when you enter menopause . . . your FSH levels [] increase" and at-home FSH test kits "do not detect menopause" but "*may help indicate* if you are in menopause or perimenopause."  The FDA further states that "[y]ou should use this test if you want to know if your symptoms, such as irregular periods, hot flashes, vaginal dryness, or sleep problems are part of menopause . . . [and it] *may help you be better informed* about your current condition when you see your doctor."  The FDA also explains that "[s]ome home menopause tests are *identical to the one your doctor uses*.  However, doctors would not use this test *by itself.*  Your doctor would use your medical history, physical exam, and *other l*aboratory tests to get a more thorough assessment of your condition."  Simon Dec. Ex. A (FDA Guidance, linked at Compl. ¶ 24).

Similarly, the Motherly blog on which Plaintiffs rely states that doctors look to FSH levels in conjunction with other factors "to get the full picture," explaining that "a doctor will likely check *hormone levels and review your cycle history* while reviewing symptoms to look for menopause." Simon Decl. Ex. D (linked at Compl. ¶¶ 29-30); *see also id.* ("FSH levels may give you some insight into where you are menopause-wise.").  Likewise, as explained below (at p. 13), Plaintiffs cite an article from *The New York Times* that confirms the Product is in line with "a widely used tool to assess the transition to menopause, known as the Stages of Reproductive Aging Workshop, *which considers F.S.H. levels* among a number of other factors."  Simon Decl Ex. E (linked at Compl. ¶ 28).

---

[5]    As set forth in the accompanying Request for Judicial Notice, these documents form the basis of Plaintiffs' theory of deception (and injury, *infra* p. 12) and are therefore incorporated by reference into the Complaint.  *See, e.g., Bounthon v. Procter & Gamble Co.*, 2024 WL 4495501, at *5-6 (N.D. Cal. Oct. 15, 2024) (Martínez-Olguín, J.) (citing cases).

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

Plaintiffs cite other bloggers and commentators who dislike FSH tests because FSH levels "fluctuate" and an FSH test does not "verify" menopause,[6] but this observation does not account for how *this* Product works and is labeled. The Product's label expressly informs consumers that the Product does not diagnose menopause, and that "FSH levels can vary, so tracking it over several days helps determine if your overall level is high, low or variable." Compl. Ex. A. Plaintiffs do not point to anything that plausibly disproves that *this* Product's testing protocol—alternating testing every other day for 10 days—and algorithm accounts for FSH variability in indicating likely menopause stage. To the contrary, the very "expert" on which Plaintiffs rely—the FDA—states that FSH tests "may help indicate if you are in menopause or perimenopause" notwithstanding that FSH levels "may rise and fall during your menstrual cycle." *See* Simon Decl. Ex. A. *See Lopez v. Mead Johnson Nutrition Co.*, 2025 WL 895213 (N.D. Cal. Mar. 24, 2025) (allegation that there is no safe level of heavy metals belied by FDA guidance on allowable limits of heavy metals); *Bounthon v. Procter & Gamble Co.,* 2024 WL 4495501, at *9 (N.D. Cal. Oct. 15, 2024) (Martínez-Olguín, J.) (statute on which plaintiffs relied set threshold concentration for substance which "reinforces the implausibility of Plaintiffs allegation" that any concentration is harmful).

Even so—and even setting aside that the opinion of a few bloggers and commentators does not suffice to plausibly allege a label claim is false without any scientific literature[7]—these blogs simply do not permit the inference for which they are cited; namely, that "experts agree" FSH levels do not factor into the determination of menopause stage *at all*. Compl. § A. At best, Plaintiffs' documents permit the inference that some doctors may decline to consider FSH, while other doctors—in accord with the FDA Guidance—*do* consider FSH levels, among other factors. Thus, Plaintiffs fail to

---

[6]    *See* Compl. ¶ 27 (citing Cedars-Sinai blog for assertion that FSH tests are useless because FSH "fluctuates" and "it isn't possible to verify the presence of menopause" with it because "the diagnosis of menopause is clinical"); *Id.* ¶ 32 (citing WebMD article for notion that FSH levels "vary" and an FSH test "doesn't tell you if you are definitely in menopause (or premenopausal or perimenopausal)"); *Id.* ¶ 26 (citing *Vajenda* blog post for assertion that FSH is useless because it "fluctuates").

[7]    *See Aloudi v. Intramedic Rsch. Grp. LLC*, 729 F. App'x 514, 516 (9th Cir. 2017) (affirming dismissal where plaintiff failed to point to independent product testing, scientific literature, or anecdotal evidence supporting assertion that product made false representations)); *McAuley v. Honey Pot Company LLC*, 2024 WL 898715 (S.D.N.Y. Mar. 1, 2024) (where cited scientific studies did not support plaintiffs' claims, quotation from doctor in news article was insufficient to raise plausible inference that the label is misleading).

plausibly allege falsity. *See Bounthon*, 2024 WL 4495501, at *8-9 (dismissing claims where studies on which plaintiffs relied to allege falsity "undercut the plausibility of their claims" and "call[ed] into question [the] very inference" for which they were cited).[8]

Plaintiffs' cited blogs and articles do not support the plausibility of their claims under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) or the particularity standard required under Rule 9(b) to plead "how" the claims are false. Accordingly, Plaintiffs' claims fail to meet the standards of Rule 12(b)(6) and Rule 9(b).

### 3. Plaintiffs' Documents Refute their Speculation about the Product's Menopause Staging Criteria

Plaintiffs' assertion that the menopause stages themselves are misleading is not well-pled because it is grounded solely in a speculative—and erroneous—assertion that the Product uses staging criteria from the Study of Woman's Health Across the Nation ("SWAN"). Compl. ¶ 22. Dismissal is proper where allegations are based on speculation, or where allegations are contradicted by documents that form the basis of the claims. *See Gonzalez v. BAC Home Loans Servicing, LP*, 2013 WL 1092890, at *4 (D. Ariz. Mar. 15, 2013), *aff'd sub nom.* 643 F. App'x 665 (9th Cir. 2016) ("allegations . . . based on mere speculation" do not survive dismissal under *Twombly*, 550 U.S. at 555); *Bounthon*, 2024 WL 4495501, at *9 (dismissing claims; "sources on which Plaintiffs rely undercut the plausibility of their claims"). Here, Plaintiffs' allegations suffer from both fatal defects.

Plaintiffs allege that the Product's staging criteria is misleading because it is derived from SWAN, where "FSH levels don't figure in at all." Compl. ¶ 22. To make this allegation, Plaintiffs rely solely on a blogger who speculates, "I *suspect* (although *I don't know* for sure) [Clearblue is]

---

[8]     *See also Otto v. Abbott Lab'ys Inc.*, 706 F. App'x 349, 350 (9th Cir. 2017) (affirming dismissal where "[v]iewed collectively and in full context, the sources cited by [plaintiff] reveal" that challenged label was not false; representation not false where "the scientific evidence is equivocal"); *McGee v. S-L Snacks Nat'l*, 982 F.3d 700 (9th Cir. 2020) (affirming dismissal; studies showing a link between consumption of trans fats and inflammation did not support allegation that consumption of trans fats in the amounts alleged by plaintiff results in inflammation); *Manuel v. Pepsi-Cola Co.*, 763 F. App'x 108, 109 (2d Cir. 2019) (affirming dismissal; plaintiffs "cannot raise a plausible inference that the use of the word 'diet' is false" where "none of the studies [cited by plaintiffs] purports to establish a causal relationship between non-nutritive sweeteners and weight gain to a degree that is sufficiently strong."); *Whyble v. Nature's Bounty Co.*, 2025 WL 968784 (S.D.N.Y. Mar. 31, 2025) (dismissing claims that supplements were deceptively advertised as effective; cited studies "focus on individual ingredients in isolation and do not test their efficacy when in combination.").

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

using the staging criteria from [SWAN]."  Simon Decl. Ex. C (*Vajenda* blog post linked at Compl. ¶ 22).[9]  An article from *The New York Times* on which Plaintiffs elsewhere rely quotes Clearblue's head of scientific and medical affairs, who explains that the Product is actually in line with "a widely used tool to assess the transition to menopause, known as the Stages of Reproductive Aging Workshop [STRAW], **which considers F.S.H. levels** among a number of other factors."  Simon Decl. Ex. E (*The New York Times* article linked at Compl. ¶ 28) (emphasis added).

In short, Plaintiffs' claim is predicated on overt speculation that is refuted by other documents on which Plaintiffs rely, and therefore should be dismissed.  *See Bounthon,* 2024 WL 4495501, at n. 8 (allegations based on "mere[] specula[tion]" are deficient).

### B.   THE COMPLAINT FAILS TO PLEAD INJURY

Even if the Complaint adequately alleges falsity (it does not), it still must be dismissed because Plaintiffs fail to adequately plead injury or damage.  Plaintiffs cite documents to try to support their bare allegation that they were injured because the Product is "worthless," but again, those sources do not permit such an inference.

"To plausibly allege a CLRA [or] UCL claim based on a misrepresentation, plaintiffs 'must allege that they relied on a misrepresentation and suffered injury as a result."  *Castillo*, 748 F. Supp. 3d at 770-71 (citation omitted).  *See also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320–21 (2011) (standing under UCL "is limited to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition"); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009) ("in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result.").  Here, Plaintiffs allege to have been injured by purchasing a "worthless" product they "would not have purchased" (Compl. ¶¶ 8-9, 41).  Plaintiffs do not specify their legal theory (and the claims are dismissible for this reason alone (*see* Rule 8, 9(b)), but these allegations suggest they claim to be injured in the amount of the full purchase price.

---

[9]   Plaintiff also cites the *Vajenda* blogger to assert in a footnote that "the time leading up to menopause is simply referred to as 'the menopause transition," (Compl. n. 6), but this allegation likewise is not well-pled; "perimenopause" is used throughout the Complaint and its sources to refer to the time leading up to menopause. *See, e.g.*, Compl. ¶ 32.

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

While "a full refund may be proper when a product confers no benefit on consumers, such is not the scenario here." *In re Tobacco Cases II*, 240 Cal. App. 4th. 779, 795 (2015). *See also Krueger v. Wyeth, Inc.*, 396 F.Supp.3d 931, 949 n. 6 (S.D. Cal. 2019) (damage under CLRA must account for "market value of the product class members received"). Plaintiffs' conclusory assertion that they were injured because the Product is "worthless" is not well-pled because it is contradicted by the very documents that underpin their theory of injury. *See Bounthon*, 2024 WL 4495501, at *9. The article from *The New York Times* on which Plaintiffs rely describes the Product's value notwithstanding one's opinion that hormone variance may impact the utility of FSH results:

> A snapshot of *hormone levels at one point might look very different* from one just a few weeks later, making it difficult to make sense of test results. Still, the kit may end up being used much like a fitness tracker – simply *providing women with additional data points*, said Dr. Nanette Santoro, a professor of obstetrics and gynecology at University of Colorado School of Medicine. This might be *especially helpful in the early stages of menopause* when "women really don't get much validation" by doctors, she added, offering some assurance that they're not just imagining the changes they're experiencing.

Simon Decl. Ex. E (linked at Compl. ¶ 28). The article goes on to note that:

> Some experts said that there might be some cases in which the test results could *provide both patients and doctors with helpful information* . . . . Dr. Dolan, who has for years seen women struggle to get the menopause care they need, said there's a *clear benefit to giving "a woman more empowerment over her health.*"

*Id.*

Likewise, the FDA Guidance on which Plaintiffs rely explains that "[t]his test may *help you be better informed* about your current condition when you see your doctor." Simon Decl. Ex. A (linked at Compl. ¶ 24). The Cedars Sinai Blog notes that "[a]t home menopause test kits may appeal to women who are curious about their health and want answers quickly, but such kits are not intended to replace medical care." Simon Decl. Ex. F (linked at Compl. ¶ 27). The Motherly blog notes that "[t]he Clearblue menopause test could be a *convenient starting point*—but remember, it's not a substitute for professional medical advice." Simon Decl. Ex. D (linked at Compl. ¶¶ 29-30). And setting aside that sources from the United Kingdom—where the Product has never been sold—add nothing to the plausibility of claims of putative class members in *this* country, the "NHS guidelines" purportedly

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

referenced by the BBC article and described by Plaintiffs supposedly discourage FSH testing in only *certain* populations of women. *See* Compl ¶ 31.[10]  Even the *Vajenda* blogger concedes that she "may suggest hormone testing" in certain populations of women.  Simon Decl. Ex. C.

Further, Plaintiffs' reliance on sources discussing FSH test kits generally[11] ignores that, unlike other at-home FSH test kits, the Product is the first and only product that *combines* FSH results with cycle history and age to indicate the user's likely menopause stage.  *See supra* pp. 2-3. Thus—even setting aside that these sources do not support the inference that FSH tests are worthless (*supra* pp. 4-5)—they cannot raise any reasonable inference that the *Product* is worthless.  *See Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 853 (9th Cir. 2024) (affirming dismissal under Rule 9(b); sources cited to support allegations "are largely unspecific to Sprout's products.").

In sum, Plaintiffs' cited documents do not permit an inference that the Product is worthless. Rather, these sources confirm that "[a]rmed with the results" from the app, "this Clearblue Menopause Stage Indicator kit can help you understand more about what is going on with your body and enable a more meaningful conversation with your doctor[.]"  Compl. Ex. A at p. 7.  Because Plaintiffs fail to plausibly allege injury or damage, their claims must be dismissed.  *See Alaei v. Gov't Emps. Ins. Co.*, 2021 WL 1165067, at *7 (S.D. Cal. Mar. 25, 2021) ("Plaintiff received some value from his purchase, and he cannot receive a full refund under the UCL.").[12]

## C.    THE OMISSION-BASED CLAIMS MUST BE DISMISSED

While a few bare references to "omissions" are peppered throughout the Complaint (at ¶¶ 7, 12, 40, 48, 54, 56, 64), Plaintiffs do not identify any information that allegedly was omitted, nor any duty

---

[10]    Plaintiffs do not cite purported "NHS guidelines" directly, and the "menopause" webpage from the NHS website—subject to judicial notice—is actually silent as to FSH testing.  *See Menopause*, NHS, https://www.nhs.uk/conditions/menopause/.  *See Hodges v. King's Hawaiian Bakery W., Inc.*, 2021 WL 5178826, at *3 (N.D. Cal. Nov. 8, 2021) ("[w]ebsites and their contents may be proper subjects for judicial notice.").

[11]    *See* Simon Decl. Ex. F (linked at Compl. ¶ 27) (Cedars-Sinai blog post discussing FSH tests generally); Simon Decl. Ex. G (linked at Compl. ¶ 32) (WebMD discussing FSH tests generally); Simon Decl. Ex. H (linked at Compl. ¶ 31) (BBC article discussing specific FSH test brands in the United Kingdom, where the Product has never been sold).

[12]    For the same reasons, Plaintiffs fail to allege entitlement to the remedies they seek; namely, restitution and damages.  *See, e.g., Big Sky Ventures I, L.L.C. v. Pac. Cap. Bancorp., N.A.*, 2008 WL 11334474, at *7 (C.D. Cal. May 6, 2008) (granting dismissal where "Plaintiffs have not alleged facts that might entitle them to restitution").

DEFENDANTS' NOTICE OF MOTION                          CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

to disclose—much less with the particularity required by Rule 9(b).  *See Castillo*, 748 F. Supp. 3d at 773 (listing circumstances under which duty to disclose arises under California law).  Plaintiffs' unadorned allegation that defendants "represent[ed] and fail[ed] to disclose material facts . . . as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose" (at ¶ 48), is the quintessential "threadbare recital" that fails to pass muster. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiffs attempt merely to recast their flawed misrepresentation claims as omission claims, which fail for the same reasons.  *See Brookside Assocs. v. Rifkin*, 49 F.3d 490, 497-98 (9th Cir. 1995) (refusing to "reward artful pleading" that "recast [a] misrepresentation" claim as "nearly every fraudulent misstatement can also be characterized as a deceitful concealment of the true state of affairs.").  Plaintiffs' alternative theory of liability must be dismissed.  *See McWhorter*, 2025 WL 948061, at *7 (omission-based theory dismissed where plaintiff alleged no facts that would establish a duty to disclose, or identify any actionable omission).

\* \* \*

For these reasons, Plaintiffs' claims under the CLRA and UCL must be dismissed.[13]  While Plaintiffs also purport to bring claims under the "consumer protection acts of 50 states" (Compl. ¶ 59-67), they offer only generalized allegations that are at best threadbare recitals of those claims (*see id.*) and, as non-residents of those states, Plaintiffs lack Article III standing to pursue them on behalf of a class—particularly without putative representative claims under the California statutes.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.") (emphasis in original).  Finally, even setting standing aside and crediting Plaintiffs' allegation that all 50 states' statutes require a showing that "Defendants' conduct is likely to deceive an objectively reasonable consumer" (Compl. ¶ 40(b)), the claims under those statutes are

---

[13]    Plaintiffs purport to invoke all three prongs of the UCL ("fraudulent" "unlawful" and "unfair"), which are predicated on the same conduct and fail for the same reasons.  *See* Compl. ¶¶ 54-57.  *See In re Apple Processor Litig.*, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022) (dismissing "unlawful" and "fraudulent" claims that were predicated on same allegations as other failed claims); *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (plaintiffs failed to state "unfair" prong claim for same reasons that other claims under other prongs failed).

DEFENDANTS' NOTICE OF MOTION                              CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

dismissible for the same reasons herein. *See Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72, 86 (S.D.N.Y. 2023) (dismissing claims brought under other laws; "[b]ecause I have already determined that Plaintiff has not plausibly alleged that the Product's labeling would be likely to deceive or mislead a reasonable consumer, these causes of action are dismissed for the same reasons."). Accordingly, all of Plaintiffs' claims should be dismissed without leave to amend. *See Steinberg v. Icelandic Provisions, Inc.*, 2022 WL 220641, at *8 (N.D. Cal. Jan. 25, 2022), *aff'd*, 2023 WL 3918257 (9th Cir. June 9, 2023) (declining leave to amend "[b]ecause the Court concludes that further amendment would be futile, given the implausibility of her deceptive labeling claims").

### D.    PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF BECAUSE THEY HAVE AN ADEQUATE REMEDY AT LAW

Even if Plaintiffs otherwise stated a claim under the UCL (they have not), the claim still must be dismissed because the UCL permits only equitable relief and Plaintiffs have not sufficiently alleged they lack an adequate remedy at law. Plaintiffs seek restitution under the UCL but "fail to explain how their claims for damages and equitable relief are based on different theories." *See Bryan v. Apple Inc.*, 2023 WL 2333893, at *3 (N.D. Cal. Mar. 2, 2023) (dismissing claim for equitable relief) (*citing Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), and *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308 (9th Cir. 2022)). Further, Plaintiffs' bare recitation of alleged circumstances under which one may lack an adequate remedy at law in the abstract (Compl. ¶ 31) is impermissibly conclusory and devoid of any facts specific to this case. *See Iqbal*, 556 U.S. at 678. For example, Plaintiffs allege that restitution "entitles a plaintiff to recover all profits from the wrongdoing," but they do not explain how such measure of restitution differs from damages in this case consistent with the proscription of non-restitutionary disgorgement. *See Smith v. Keurig Green Mountain, Inc.*, 2020 WL 5630051, at *8–9 (N.D. Cal. Sept. 21, 2020) (damages model that "focused solely on Keurig's profits or costs, untethered from some difference in consumer value" of allegedly mislabeled product is "nonrestitutionary disgorgement, which is an improper method of calculating restitution as a matter of law.") (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 944 (Cal. 2003)); *see also Chowning v. Kohl's Dep't Stores, Inc.*, 733 F. App'x 404, 406 (9th Cir. 2018).

1    In short, because Plaintiffs' conclusory allegations do not explain "why monetary damages

2    would be inadequate to make Plaintiffs whole" *in this case*, their claim for equitable relief must be

3    dismissed. *Smith v. Apple, Inc.*, 2023 WL 2095914, at *3 (N.D. Cal. Feb. 17, 2023) (dismissing claim

4    for restitution without leave to amend). *See also Castillo*, 748 F. Supp. 3d at 774.

### E.    EVEN IF PLAINTIFFS STATE A CLAIM, THE COMPLAINT MUST BE DISMISSED AS TO P&G AS AN IMPROPER DEFENDANT

7    P&G moves to dismiss the Complaint on the additional ground that—even if Plaintiffs'

8    allegations state a claim (they do not, for the reasons set forth above)—P&G is not a proper defendant,

9    for two independent reasons.  First, this Court lacks personal jurisdiction over P&G to adjudicate

10   Plaintiffs' claims.   P&G is incorporated and headquartered in Ohio, and has never designed,

11   manufactured, labeled, or (contrary to Plaintiffs' assertion) distributed the Product. *See Faber Decl.* ¶¶

12   2, 7.[14]  Second, even if there were a basis to exercise personal jurisdiction over P&G (there is not),

13   Plaintiffs have not alleged facts that plausibly establish P&G's liability under the CLRA or UCL.

14   Plaintiffs improperly group SPD and P&G together in their pleadings, attributing the Product's

15   allegedly misleading labeling to "Defendants," without tying P&G's individual conduct to the

16   purported wrongdoing.   Unable to allege such facts, Plaintiffs rely on a bare assertion that "each

17   Defendant acted . . . as the agent of the other Defendant," but provide no factual basis for this agency

18   theory.  The Court should dismiss Plaintiffs' claims against P&G with prejudice.

### 1.    The Court Lacks Personal Jurisdiction Over P&G.

20   When sitting in diversity, this Court may exercise jurisdiction over a nonresident defendant

21   only if the defendant has "minimum contacts" with California such that "maintenance of the suit does

22   not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

23   U.S. 310, 316 (1945) (internal quotation marks and citations omitted).  Plaintiffs bear the burden of

24   establishing that the Court has personal jurisdiction over each defendant, and are "obligated to come

25   forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys. v.*

26   *Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).  "Personal jurisdiction takes two forms: general or

---

27   [14]    When adjudicating a motion to dismiss for lack of personal jurisdiction, the Court may consider
28   extrinsic evidence, including affidavits submitted by a defendant. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 951 (N.D. Cal. 2015).

all-purpose jurisdiction, and specific or case-linked jurisdiction." *Sinatro v. Mrs. Gooch's Nat. Food Mkts., Inc.*, 2023 WL 2324291, at *2 (N.D. Cal. Feb. 16, 2023) (internal quotations and citations omitted).  Neither applies to P&G in this case.

Only a corporation with contact "so continuous and systematic as to render [it] essentially at home in the forum State" can be subject to general personal jurisdiction.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citations omitted).  Absent an "exceptional case," a corporation is deemed "at home" only in its state of incorporation or principal place of business.  *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014).  P&G is not subject to general personal jurisdiction in California, and Plaintiffs do not even allege as much.  As Plaintiffs concede, P&G is incorporated in Ohio and has its principal place of business in Cincinnati, Ohio.  Compl. ¶ 10; Faber Decl. ¶ 2.  The Complaint does not allege any "continuous and systematic general business contacts, that approximate physical presence in" California to establish general personal jurisdiction.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (internal quotation marks and citations omitted).  Nor could Plaintiffs plausibly make such allegation since P&G does not own property, maintain bank accounts, nor manufacture goods in California. Faber Decl. ¶ 2.

The Court likewise cannot exercise specific personal jurisdiction over P&G, because the company's "suit-related conduct [does not] create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also Schwarzenegger*, 374 F.3d at 802 (plaintiffs must demonstrate their claims arose specifically out of the non-resident defendant's purposeful conduct in California).  P&G does not have *any* direct link to Plaintiffs' claims, let alone the purposeful contact that is required.  Plaintiffs baldly assert that "this Court has jurisdiction over Defendants [SPD and P&G] because a substantial portion of the events giving rise to Plaintiffs' claims occurred in California."  Compl. ¶ 6.  But Plaintiffs do not demonstrate any facts directly connecting P&G to the purported wrongdoing.  P&G is not a direct parent of SPD, nor involved in SPD's business operations. *See* Faber Decl. ¶¶ 5-6.[15]  P&G does not dedicate employees to the Clearblue brand or SPD, and did

---

[15]    P&G is an indirect parent company of Procter & Gamble International Operations SA ("PGIO"), a Swiss legal entity.  PGIO in turn holds a 50% ownership stake in SPD, which controls and operates the Clearblue brand.  *Id.*

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

1    not direct the Product's marketing, promotion, design, packaging, or labeling. *Id.* ¶ 6. And, contrary

2    to Plaintiffs' allegations, P&G does *not* distribute the Product. Faber Decl. ¶ 7; *Sinatro*, 2023 WL

3    2324291, at *4, *6 (crediting defendant's affidavit that it did not distribute challenged products

4    notwithstanding plaintiffs' bare allegations otherwise). Accordingly, Plaintiffs have failed to establish

5    specific personal jurisdiction over P&G.

6                    **2.    SPD's California Contacts Cannot Be Imputed to P&G.**

7            To the extent Plaintiffs suggest that the Court has personal jurisdiction over P&G through a

8    supposed agency relationship with SPD (Compl. ¶ 12), this argument also fails. To establish a

9    principal-agent relationship for purposes of personal jurisdiction, a plaintiff must allege facts

10   demonstrating that the principal has "the right to substantially control" the agent's activities.

11   *Hernandez v. Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1060 (N.D. Cal. 2022); *see Juniper Networks,*

12   *Inc. v. Andrade*, 2020 WL 5630023, at *6 (N.D. Cal. Sept. 21, 2020) ("specific jurisdiction may be

13   based on an agent's contacts with the forum state only where the 'agent act[s] on the principal's behalf

14   and subject to the principal's control.'"). Likewise, although alter-ego theory is not pled (and setting

15   aside that P&G is not SPD's direct parent (*supra* n. 15)), Plaintiffs cannot establish specific personal

16   jurisdiction via such a theory because to do so, they must show "pervasive control over the subsidiary."

17   *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).

18           Plaintiffs allege no facts whatsoever that would impute SPD's conduct and contacts in

19   California to P&G. Plaintiffs rest on a bare assertion that each Defendant acted "as the agent of the

20   other Defendant within the course and scope of the agency." Compl. ¶ 12. But the Ninth Circuit has

21   held that such "conclusory legal statement[s] unsupported by any factual assertion regarding [the

22   parent's] control" do not suffice to confer jurisdiction. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015,

23   1024-25, n. 5 (9th Cir. 2017) (allegation that defendants "were the agents [ ] of each other and were

24   acting at all times within the course and scope of such agency . . . and are legally responsible because

25   of their relationship with their co-Defendants" does not adequately plead agency); *see also Gardner v.*

26   *Starkist Co.*, 418 F. Supp. 3d 443, 465-66 (N.D. Cal. 2019) (conclusory allegation that parent

27   controlled all aspects of subsidiary's business, including production, marketing, pricing, and sales, was

28   insufficient to establish agency). Nor can Plaintiffs amend to credibly allege any facts that would

                                                        19

allow the Court to impute SPD's contacts to P&G, because P&G has no role in SPD's operations generally, or in SPD's development and promotion of the Product specifically.  As noted above, P&G does not control SPD or its shareholders, and does not direct their day-to-day business operations. Faber Decl. ¶ 6.  P&G does not design, develop, or manufacture the Product, nor does P&G control the advertising, labeling, promoting, selling, or distributing the Product.  *Id.*

Plaintiffs' allegations of a generic web presence relating to the Product purportedly attributed to P&G (Compl. ¶ 10), are likewise insufficient to establish personal jurisdiction. In *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450 (9th Cir. 2007), the Ninth Circuit found that a parent's product advertisements and "sponsored web marketing for products that ended up in" the forum state were insufficient to establish personal jurisdiction over a parent company, where the parent's website did not provide direct means to purchase the products.  *Id.* at 459-60 (alleged promotional activity must be "purposefully directed toward the forum state").  *See also Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031 (N.D. Cal. 2018) ("mere web presence or advertisements that incidentally may have made their way to the forum state are insufficient to establish specific jurisdiction without more substantial evidence of contacts with the state.") (internal quotations omitted).  As in *Holland* and *Kellman*, the social media posts and press releases that Plaintiffs attribute to P&G are merely generic advertisements for the Product that do not provide a direct means for purchasing the Product from P&G, were not directed at California, and thus cannot establish personal jurisdiction over P&G.  Compl. ¶ 10.

### 3.    Plaintiffs Have Not Pled Facts that Plausibly Establish P&G's Liability

Even if Plaintiffs could establish personal jurisdiction over P&G (they cannot), the Complaint is devoid of factual allegations specifying P&G's involvement in the allegedly misleading labeling of the Product.  Throughout, Plaintiffs ascribe alleged false advertising practices to "Clearblue" and "Defendants" as an undifferentiated group, with no attempt to tie specific allegations to either individual defendant. *See e.g.*, Compl. ¶¶ 1-4, 6, 13-16, 21-22, 47-48, 54-56.  For example, Plaintiffs allege that "Clearblue sells a Menopause Stage indicator," "Defendants' advertising of [the Product] as capable of indicating menopause stage is false and misleading," and as a result of "Defendants' material representations and omissions" Plaintiffs allegedly were harmed.  Compl. ¶¶ 1, 34, 54.

Although Plaintiffs acknowledge that SPD manufactures the Product and owns the Clearblue brand, (Compl. ¶ 11), Plaintiffs define "Clearblue" as including both P&G and SPD, and broadly claim that "Clearblue" and "Defendants" are responsible for the alleged mislabeling of the Product. Compl. ¶¶ 2, 4, 8, 13, 15, 21-22, 34, 47-48, 54-56.

These impermissible group pleadings fail as a matter of law. Rule 9(b) requires that a plaintiff in a fraud suit "identify the role of each defendant" and "differentiate their allegations" to "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018). Plaintiffs' imprecise allegations fail to satisfy these notice-pleading requirements. Courts regularly dismiss group pleadings where, as here, consumers indiscriminately assert claims against a defendant and its affiliates. *See Yan Mei Zheng-Lawson v. Toyota Motor Corp.*, 2018 WL 2298963, at *2 (N.D. Cal. May 21, 2018) (dismissing claims against three separate Toyota entities where plaintiffs "lump[ed] multiple defendants together" and "alleg[ed] throughout the pleading that 'Toyota' and 'Defendants' made the actionable misrepresentations"); *Meyers v. McDonalds USA LLC*, 2024 WL 5182203, at *9 (C.D. Cal. Apr. 18, 2024) (holding that "[d]efendants cannot be lumped together" to satisfy Rule 9(b) and dismissing claim against parent and subsidiary where the complaint did not differentiate either defendant's role in the alleged fraudulent scheme). As described above, the Complaint is replete with general assertions concerning "Clearblue" and "Defendants" without differentiating between P&G and SPD.[16] Plaintiffs do not satisfy the pleading requirements of Rules 8(a), 12(b)(6), and 9(b).

Unable to allege facts to support a direct claim, Plaintiffs suggest that P&G can be held vicariously liable for SPD's conduct by virtue of their corporate relationship or principal-agent relationship with SPD. Compl. ¶ 12. Not so. "It is well established that the 'concept of vicarious liability has no application to actions brought under the [UCL or CLRA]'"; rather, "a defendant's liability . . . must be based on its personal 'participation in the unlawful practices' and 'unbridled

---

[16]     The only specific allegations as to P&G, contained in Paragraph 10, are that (i) P&G distributes the Product (which is incorrect, *supra* p. 19, and in any event insufficient in and of itself to establish liability (*Rivera v. Midway Importing, Inc.*, 2018 WL 6438552, at *2 (C.D. Cal. Aug. 21, 2018))); and (ii) that P&G generically "markets" the Product online (but the Complaint nowhere specifies P&G's supposed role with respect to the *challenged* claims (Compl. ¶¶ 15-19) or even alleges that Plaintiffs saw, let alone relied on, any particular online "market[ing]" ascribed to P&G (*Musgrave v. Taylor Farms Pac., Inc.*, 2019 WL 8230850 (N.D. Cal. Feb. 20, 2019); Compl. ¶¶ 8-9).

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 3:25-cv-00923-AMO
AND MOTION TO DISMISS COMPLAINT

control' over the [offending] practices." *Reed v. NBTY, Inc.*, 2014 WL 12284044, at \*9 (C.D. Cal. Nov. 18, 2014) (quoting *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (dismissing claims where defendant "exercised no control over the preparation or distribution of the solicitations" at issue and plaintiff "offered no evidence to give rise to a reasonable inference of ostensible authority" to act on defendant's behalf)).    Plaintiffs attempt to obfuscate P&G's corporate separateness by alleging that SPD and P&G "acted in concert with, with the knowledge and approval of, and/or as the agent of" the other.    Compl. ¶ 12.    However, these conclusory allegations do not "give rise to a reasonable inference of ostensible authority" for either Defendant to act on the other's behalf. *Emery*, 95 Cal. App. 4th at 961; *see Williams*, 851 F.3d at 1024-25.    Plaintiffs do not—and credibly cannot— allege that P&G exercised "unbridled control" over SPD's labeling and marketing of the Product. *Emery*, 95 Cal. App. 4th at 960.

## V.    <u>CONCLUSION</u>

The Complaint should be dismissed with prejudice in its entirety and without leave to replead. If not, the Complaint should be dismissed with prejudice as to P&G.

Respectfully Submitted,

Dated:  May 30, 2025                By: */s/ Norman C. Simon*
                                    Norman C. Simon (admitted *pro hac vice*)
                                    nsimon@kramerlevin.com
                                    Eileen M. Patt (admitted *pro hac vice*)
                                    epatt@kramerlevin.com
                                    Irene Weintraub (admitted *pro hac vice*)
                                    iweintraub@kramerlevin.com
                                    KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                    1177 Avenue of the Americas
                                    New York, NY 10036
                                    Tel.: (212) 715-9100

                                    Lisa Kobialka (SBN 191404)
                                    lkobialka@kramerlevin.com
                                    KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                    333 Twin Dolphin Drive, Suite 700
                                    Redwood Shores, CA 94065
                                    Tel.: (650) 752-1700

                                    *Attorneys for Defendants*