UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASSANDRA MARSHALL, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>PROCTER & GAMBLE COMPANY, et al.,<br><br>   Defendants. | Case No. 25-cv-00923-AMO<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 24 |

This is a putative class action involving claims that the label of Defendants' product is false and misleading. Defendants SPD Swiss Precision Diagnostics GmbH ("SPD") and The Procter & Gamble Company ("P&G") together moved to dismiss the Complaint. Defendants' motion was heard before this Court on September 11, 2025. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** the motion for the following reasons.

I. **BACKGROUND**[1]

The product at issue is the Clearblue Menopause Stage Indicator (the "Product"), manufactured by SPD and marketed and distributed by P&G. Compl. ¶¶ 10-11. Plaintiffs Cassandra Marshall and Raquel Riley, both citizens of California, separately purchased the Product in 2023. Compl. ¶¶ 8-9. The Product works by capturing data through five Follicle-Stimulating Hormone ("FSH") urine tests over the course of 10 days and is designed for use with

---

[1] This factual background is taken from the allegations in the operative complaint, which the Court accepts as true and construes in the light most favorable to Plaintiffs for the purpose of the instant motion. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

1  an accompanying cell phone application ("the app").  Compl. ¶¶ 15-16, *see also* Ex. A at 6-7.[2]  An

2  algorithm in the app guides users on how and when to test, and it combines FSH results with age

3  and menstrual cycle history to calculate "likely" menopause stage.  Compl., Ex. A at 6-7.

4  Consumers can generate a personalized report of their FSH results combined with a log of their

5  symptoms and cycle history to share with their healthcare professionals to have an informed

6  conversation about menopause.  *Id.*  "Armed with [these] results," an online product description

7  appended to the Complaint states, "this Clearblue Menopause Stage Indicator kit can help [a

8  woman] understand more about what is going on with [her] body and enable a more meaningful

9  conversation with [her] doctor[.]"  Compl., Ex. A at 7.

10  FSH levels increase as a woman enters menopause, according to a Food and Drug

11  Administration ("FDA") webpage cited by Plaintiffs.  *See* Simon Decl., Ex. A ("FDA Guidance");

12  Compl. ¶ 24.  While at-home kits that measure FSH in urine "do not detect menopause or

13  perimenopause," they "may help indicate if you are in menopause or perimenopause."  *Id.*  The

14  FDA guides consumers to "use this test if you want to know if your symptoms, such as irregular

15  periods, hot flashes, vaginal dryness, or sleep problems are part of menopause. . . .  This test may

16  help you be better informed about your current condition when you see your doctor."  *Id.*

17  FSH alone cannot indicate menopause stage because FSH levels vary, *see* Compl. ¶ 23,

18  and a test for FSH levels cannot provide an accurate snapshot of a person's menopause status, *see*

19  *id.* ¶ 27.  Plaintiffs allege that they were misled by the label into believing that the Product can

20  "indicate your menopause stage by measuring FSH."  Compl. ¶ 2.  Immediately below the

21  challenged claim, "Menopause Stage Indicator," the front label states that the "Likely menopause

22  stage given *only* when test sticks are used with FREE app," and the side label further explains that

23  the app "combines 5 FSH test results with other factors including cycle history and age to

---

[2] The documents attached to the Complaint as well as those submitted by Defendants are properly considered on a motion to dismiss under the incorporation by reference doctrine.  A document is incorporated by reference when the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).  This doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims."  *Id.* at 1002.  At the hearing, Plaintiffs agreed that the Court could consider these materials.

calculate your likely menopause stage." Compl. Ex. A. at 2 (emphasis in original); *see also id.* (back label explains: "app indicates your likely menopause stage"). A superscript one ("¹") indicating a footnote follows multiple label statements, leading the reader to a text box on the side panel that reads, "[a] confirmed menopause stage diagnosis can only be made by a physician after all clinical and laboratory findings have been evaluated." Compl. ¶ 18; Ex. A at 2.

Based on the alleged misleading nature of the Product label, Plaintiffs advance claims for violations of California Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750, et seq., and California Unfair Competition Law ("UCL"), Cal. Business & Professions Code § 17200, et seq., on behalf of a putative California subclass, as well as violations of the "consumer protection acts of 50 states" on behalf of a putative nationwide class. Compl. ¶¶ 59-67.

## II.     DISCUSSION

Defendants together move to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim based on a lack of falsity in the Product label and failure to plausibly allege a theory of damages. *See* Dkt. No. 24 ("Mot."). P&G alternatively moves for dismissal under Rule 12(b)(2) for lack of personal jurisdiction over the Ohio-based corporation. *Id.* Because the Court finds the claims legally insufficient, it does not reach P&G's personal jurisdiction argument.

### A.     Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, it need not accept legally conclusory statements unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations

and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court may consider matters that are properly the subject of judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider documents referenced extensively in the complaint and documents that form the basis of the plaintiffs' claims. *See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

Plaintiffs' claims that sound in fraud must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted). If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

**B.     Reasonable Consumer Standard**

P&G argues that Plaintiffs' CLRA and UCL claims fail because none of the theories advanced demonstrate that a reasonable consumer would find the Product labels false or misleading. To protect its citizens from unfair, deceptive, or fraudulent business practices, California has enacted a number of consumer protection statutes. The CLRA prohibits "unfair or

4

deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any customer." Cal. Civ. Code § 1770(a). Similarly, the UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. These claims are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

"Under the consumer protection laws of California[,] . . . claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); accord *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* at 938 (internal quotation marks omitted) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). The reasonable consumer test requires more than a mere possibility that defendant's product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, the test requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*; *see also Moore*, 4 F.4th at 881.

Generally, "whether a reasonable consumer would be deceived . . . [is] a question of fact not amenable to determination on a motion to dismiss." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); *see Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). "However, in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Ham*, 70 F. Supp. 3d at 1193.

In *Williams*, the Ninth Circuit determined that a reasonable consumer could be deceived by images on a fruit snack label depicting a number of different fruits, "potentially suggesting (falsely) that those fruits or their juices are contained in the product." *Williams*, 552 F.3d at 939. The appellate panel rejected the argument that a misrepresentation on the front of the package could be cured by a disclaimer on the back of the package, instead concluding "reasonable

1    consumers expect that the ingredient list contains more detailed information about the product that

2    confirms other representations on the package." *Id.* at 939-40.

3    Since *Williams*, the Ninth Circuit has further clarified that, when a front label is ambiguous rather than unambiguously deceptive, "the ambiguity can be resolved by reference to the back label." *McGinity*, 69 F.4th at 1099.  In *McGinity*, the plaintiff alleged that the packaging of "Pantene Pro-V Nature Fusion" shampoo and conditioner products was deceptive because the label suggested the products "are natural, when, in fact, they contain non-natural and synthetic ingredients." *Id.* at 1096.  As a result, the Ninth Circuit considered the back label, and it observed that mentions of avocado oil, together with an ingredient list that contained synthetic ingredients, clarified that "Nature Fusion" referred to a mix of natural and synthetic ingredients. *Id.* at 1099.  Building on *McGinity*, the Ninth Circuit explained that "a front label is ambiguous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation" and that this ambiguity triggers a consumer's obligation to search a back label. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 781 (9th Cir. 2024).  For example, "the presence of an asterisk alone puts a consumer on notice that there are qualifications or caveats" may create an ambiguity that requires a reasonable consumer to look further. *Whiteside*, 108 F.4th at 785.

Based on the reasonable consumer standard, Defendants advance three arguments on which Plaintiff's claims of falsity fall short.  The Court considers each.

### 1. The Full Context of the Label Dispels Plaintiffs' Theory of Falsity

Plaintiffs theorize that the Product name – Clearblue Menopause Stage Indicator – misleads reasonable consumers into believing that the test sticks "indicate[] your menopause stage by measuring FSH." Compl. ¶ 2.  However, "Plaintiffs are not free to excise or ignore words on the label to manufacture" falsity. *McWhorter v. Procter & Gamble Co.*, No. 24-CV-00806-AMO, 2025 WL 948061, at *7 (N.D. Cal. Mar. 28, 2025).  The front label makes clear that a user's "likely" menopause stage is given "**only** when test sticks are used with FREE app," and the side label explains that the app "combines 5 FSH test results with other factors including cycle history and age to calculate your likely menopause stage." Compl., Ex. A. at 2 (emphasis in original).

1    Plaintiffs point to multiple online sources to contend that the Product's five sticks to detect FSH in
2    urine collectively indicate nothing about the menopause transition or menopause. *See* Compl.
3    ¶ 21. But Plaintiffs' allegations that the FSH "pee sticks" are ineffective on their own does not
4    account for the label's statement that the related app employs an algorithm to combine FSH
5    measurements and other factors including cycle history and age to provide the user their likely
6    menopause stage. Because Plaintiffs' assertion of falsity rests on only a portion of the Product to
7    the ignorance of the label's clear reference to the Product's app and algorithm, Plaintiffs have not
8    alleged that the reasonable consumer is likely to be misled. *See Moore*, 4 F.4th at 881.

### 2. Plaintiffs' Documents Refute their Contentions about the Product's Menopause Staging Criteria

Plaintiffs seek to avoid focus on the deficiencies in their fundamental allegations of falsity regarding the FSH tests by attacking as "pseudoscience" the menopause stages reported by the Product. Opp. at 13-14. In essence, Plaintiffs suggest that these stages mirror irrelevant staging criteria that are not used in a clinical setting and which do not consider FSH levels. Opp. at 13-15 (citing Compl. ¶ 22). Plaintiffs' claim appears predicated solely on a cited source's statement regarding the origin of the four stages contemplated by the test, which reads, "I suspect (although I don't know for sure) [Clearblue is] using the staging criteria from the Study of Women's Health Across the Nation ('SWAN')." Simon Decl., Ex. C (Gunter, "Don't Waste Your Money on the Clearblue Menopause Journey Test," *The Vajenda* (Sept. 8, 2023), cited with permalink at Compl. ¶ 22 n.6). This statement does not invalidate or render the stages listed on the Product label false. To the contrary, the equivocal nature of the statement demonstrates the speculative nature of Plaintiffs' theory regarding the staging criteria and undermines the plausibility of Plaintiffs' claims. *See Wertymer v. Walmart, Inc.*, 142 F.4th 491, 498 (7th Cir. 2025) (affirming dismissal of product advertising claims and noting, "The documents upon which [plaintiff] relies and has made essential to his claim lay bare the speculative nature of the complaint.").

Further, the premises that the stages themselves are false because they are based on SWAN and that the stages cannot rely on FSH levels are both contradicted by another source Plaintiffs incorporate into their pleading. A separate article cited by Plaintiffs quotes Clearblue's head of

scientific and medical affairs, who explains that the Product stages rest upon "a widely used tool to assess the transition to menopause, known as the Stages of Reproductive Aging Workshop [STRAW], which considers F.S.H. levels among a number of other factors." Simon Decl., Ex. E (Gupta, "Can a New At-Home Test Tell You if You're in Menopause?," *The New York Times* (Oct. 2, 2023), cited with permalink at Compl. ¶ 28 n.12). Plaintiffs describe Defendants' argument that the Product's stages are in line with STRAW, not SWAN, as a factual assertion outside the Complaint that "raises issues appropriate for expert testimony at a later stage." Opp. at 15 n.2. But this is not a dispute of fact. Rather, Plaintiffs' allegations of falsity regarding the Product's stages are contradicted by materials Plaintiffs incorporated into the Complaint. Such a contradiction shows that Plaintiffs' allegations of inherent falsity are implausible. *See Bounthon v. Procter & Gamble Co.*, No. 23-CV-00765-AMO, 2024 WL 4495501, at *8 (N.D. Cal. Oct. 15, 2024); *see also Wertymer*, 142 F.4th at 498 (stating that plaintiff "doomed his complaint by referring to and relying upon documents that also belie his claims by offering 'obvious alternative explanations' for the complaint's factual allegations" (quoting *Twombly*, 550 U.S. at 567)). The Court need not delve deeper – Plaintiffs' assertion of falsity based on the Product's stages falls short of the plausibility standard, and the claims must fail.

### 3. Plaintiffs' Documents Contradict the Allegation that FSH Measurements are Useless

Plaintiffs also allege the Product's claims are false regarding the efficacy of FSH tests to indicate menopause because FSH levels can fluctuate, Compl. ¶¶ 21, 26, but Plaintiffs fail to allege or identify any source that plausibly undermines that this Product's protocol (alternating testing every other day for 10 days) and algorithm accounts for FSH variability in indicating a likely menopause stage.[3] Though Plaintiffs aver that "experts" have reached consensus that FSH

---

[3] To the extent Plaintiffs' theory rests on the Product's alleged claim that it can indicate the user's menopause stage akin to a doctor's diagnosis, Compl. ¶¶ 21, 27, the front label makes clear that only a "likely" stage is provided, and the label includes a superscript numeral indicating a footnote (like an asterisk) directing consumers to "see sides of pack" which state: "A confirmed menopause stage diagnosis can only be made by a physician after all clinical and laboratory findings have been evaluated." *Id.* "[T]he presence of an asterisk alone puts a consumer on notice that there are qualifications or caveats[.]" *Whiteside*, 108 F.4th at 785. Any assertion of falsity is undermined by the clarification of the Product's limitations.

measurements "do not factor into the determination of menopause stage at all," the same reports cited by Plaintiffs contradict and undercut the plausibility of that assertion. *See* Compl. ¶¶ 21-33. For example, the FDA source cited by Plaintiffs notes, "when you enter menopause . . . your FSH levels [] increase" and at-home FSH test kits "do not detect menopause" but "may help indicate if you are in menopause or perimenopause." Simon Decl., Ex. A (FDA Guidance, linked at Compl. ¶ 24 n.8). The FDA further states that "[y]ou should use this test if you want to know if your symptoms, such as irregular periods, hot flashes, vaginal dryness, or sleep problems are part of menopause . . . [and it] may help you be better informed about your current condition when you see your doctor." *Id.* The FDA also explains that "[s]ome home menopause tests are identical to the one your doctor uses. However, doctors would not use this test by itself. Your doctor would use your medical history, physical exam, and other laboratory tests to get a more thorough assessment of your condition." *Id.* Similarly, another source on which Plaintiffs rely states that doctors look to FSH levels in conjunction with other factors "to get the full picture," explaining that "a doctor will likely check hormone levels and review your cycle history while reviewing symptoms to look for menopause." Simon Decl., Ex. D (Fischer, "Should you try an at-home menopause test?," *Motherly* (Sept. 5, 2023), cited with permalink at Compl. ¶ 29 n.13). Further still, Plaintiffs incorporate a source that confirms the Product is in line with "a widely used tool to assess the transition to menopause, known as the Stages of Reproductive Aging Workshop, which considers F.S.H. levels among a number of other factors." Simon Decl., Ex. E (Gupta, "Can a New At-Home Test Tell You if You're in Menopause?," *The New York Times* (Oct. 2, 2023), cited with permalink at Compl. ¶ 28 n.12). All these sources contradict Plaintiffs' basic contention that FSH levels are provably irrelevant in assessing menopause transition stages. *Cf.* Compl. ¶ 21. Accordingly, Plaintiffs fail to allege falsity. *See Bounthon*, 2024 WL 4495501, at *8-9 (dismissing claims where studies on which plaintiffs relied to allege falsity "undercut the plausibility of their claims" and called into question the inferences for which they were cited).

### C.     Leave to Amend

"Generally, Rule 15 advises the court that leave shall be freely given when justice so requires. This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon,*

9

*Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotations and citations omitted).  Courts may deny leave to amend "only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (modification in original).

The futility of amendment factor weighs in favor of denying leave to amend where "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]"  *See Ross v. AT&T Mobility, LLC*, No. 19-CV-06669-JST, 2020 WL 9848733, at *4 (N.D. Cal. Dec. 18, 2020) (citations omitted).  That is the case here.  As discussed above, Plaintiffs' claims fail the reasonable consumer test as a matter of law.  Reasonable consumers expect that the Product works by combining FSH measurements with other factors in the app, and Plaintiffs fail to allege that the Product's app and algorithm cannot indicate a user's likely menopause stage.  Additionally, the Product puts the reasonable consumer on notice that "[a] confirmed menopause stage diagnosis can only be made by a physician after all clinical and laboratory findings have been evaluated." Compl. ¶ 18; Ex. A at 2.  Plaintiffs' Complaint expressly incorporates a range of sources that contradicts Plaintiffs' fundamental assertions of falsity, including the purported uselessness of FSH level testing and the purported falsity of the menopause stages.  Because "[a] party cannot amend pleadings to directly contradic[t] an earlier assertion made in the same proceeding," any withdrawal of the contradictory sources or additional allegations cannot possibly resolve the implausibility that infects Plaintiffs' Complaint.  *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (internal quotation marks and citation omitted).  Moreover, when afforded the opportunity at the hearing to explain how the pleading could be amended to avoid such potential contradiction within the allegations and plausibly state a claim, Plaintiffs' counsel failed to provide a meaningful response.  Accordingly, the Court determines that further amendment would be futile and exercises its discretion to deny leave to amend.  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss for failure to state a claim. Because Plaintiffs' claims fail as a matter of law, the Court **DISMISSES** the claims with prejudice.

**IT IS SO ORDERED.**

Dated: September 17, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**